(No. 16015.—Decree affirmed.)
ANNA W. HAGEN, Appellant, vs. HENNING ANDERSON
et al. Appellees.

*Opinion filed April 24, 1925—Rehearing denied June 5, 1925.*

1. SPECIFIC PERFORMANCE—*equity will enforce family settlement if there is an existing enforceable contract.* Courts of equity favor the settlement of family disputes by agreement and will specifically enforce an agreement in settlement of such differences where there is an existing enforceable contract signed by all the heirs-at-law, none of whom are under any disability and where there is no misunderstanding or fraud.

2. SAME—*general rule as to when contract for conveyance will be enforced.* Contracts to devise or convey real estate are enforced by specific performance on the ground that the law cannot do perfect justice; and such a contract, to be so enforced, must be based on a valuable consideration, be reasonably certain as to its subject matter, stipulations and purposes, and must be equitable and just.

3. SAME—*contract for conveyance must be written or partly performed—agency.* A contract for the conveyance of real estate, to be enforceable under the Statute of Frauds, must be in writing, or must be so far performed by one party as to take it out of that statute; and where the contract is signed by an agent, the authority of the agent must be in writing.

4. PARTITION—*when an alleged family settlement cannot be specifically enforced.* An alleged family settlement cannot be enforced by a bill for specific performance, and partition in accordance therewith, where the only memorandum of the agreement is signed by attorneys who had no written authority and is not sufficiently intelligible to form the basis of a contract, and where no part performance is shown to have taken the contract out of the Statute of Frauds, except the surrendering of a note in the hands of one of the parties, which is still in the possession of her attorney.

APPEAL from the Circuit Court of Iroquois county; the Hon. FRANK L. HOOPER, Judge, presiding.

THOMAS G. VENNUM, A. F. GOODYEAR, and ROBERT F. GOODYEAR, for appellant.

C. HELMER JOHNSON, FREE P. MORRIS, and ROSCOE C. SOUTH, for appellees.

Per CURIAM: Appellant by her amended bill in the circuit court of Iroquois county seeks specific performance of a certain alleged contract for partition and sale of a tract of land containing eighty acres, a small tract of five acres, and certain lots in the village of Donovan, in said county. The original bill filed charged that a deed to the eighty-acre tract of land had been procured from John V. Sandell, father of appellant and appellee Emma Anderson, through undue influence, at a time when he was not mentally competent to transact business, and prayed that the deed be set aside. In January, 1922, an amended bill was filed, alleging that after the death of Sandell appellant and appellees, together with certain grandchildren of the deceased, children of his two deceased daughters, by their respective fathers, agreed that the land should be partitioned, and that such agreement was in settlement of a family dispute, and prayed that partition be had in accordance with such agreement. The amended bill also charged undue influence of appellees and mental incompetency of the deceased. An answer was filed by appellees, denying that they in any way consented to a decree for partition, and denying the charge of undue influence and the allegations of mental incompetency of Sandell. The cause was heard by the chancellor, who found against the allegations of the bill as to the existence of a contract of settlement and as to undue influence and mental incompetency of Sandell, grantor in the deed to the eighty acres of land. Partition was by the decree ordered as to certain property not in dispute, and the prayer of the bill for specific performance and partition as to the eighty acres of land in question was denied. Appellant brings the cause here, contending that the court erred in denying specific performance and partition.

While error is assigned on the finding of the court that the charges in the amended bill pertaining to undue influence and the allegations of want of mental capacity of Sandell were not sustained, appellant makes no attempt to argue

that point here, and the record shows that but little attempt was made to substantiate those allegations. of the bill on the hearing before the chancellor.

The facts as they appear from the record herein are, that Sandell died on July 12, 1919, at the age of eighty years. His wife had pre-deceased him. He was survived by two children and eight grandchildren, children of two deceased daughters. He had lived on the eighty-acre farm in question until about 1912, when he moved to Donovan and purchased a house and some lots, which he occupied until a short time previous to his death. His wife died in 1916. After her death he lived alone. In May, 1919, he became seriously ill and was taken to the farm, which was at that time occupied by appellees as tenants. It appears that on the 10th of June, 1919, Sandell made a deed of this eighty-acre homestead to appellees. The consideration named was $8000. About the same time he executed a note for $4000 to appellant, and directed appellee Emma Anderson to deliver the note to appellant. After the death of Sandell appellant expressed dissatisfaction with the fact that appellees had procured the eighty acres by this deed, claiming the value of the farm was approximately $18,000. Litigation was talked of, and an old-time friend of the family, Edward Elming, together with another friend, Albert Barnlund, requested all the heirs of Sandell to meet on the farm for the purpose of bringing about a settlement of the difficulties. In response to this request the family gathered at the homestead on the 12th of August, 1919. Elming stated the difficulty that had arisen, and after considerable argument as to the merits of the contentions of the parties he proposed that bids be taken on the homestead. Evidence of appellant tends to show that after several bids were had it was agreed that appellee Henning Anderson should have the farm at $18,160; that further agreement was had as to the improvements put on the premises by appellees, and it was suggested that the matter be referred

to an attorney for the purpose of putting the agreement into writing and further carrying it out. It appears that Elming called F. M. Crangle, an attorney at law of Watseka, and arranged to have the parties all meet at his office on the next day. On the day following all parties in interest met at the office of Crangle, and appellant's evidence is that Crangle was informed that a family settlement had been made and the parties wanted to carry out its provisions; that they were advised by Crangle that on account of the minor grandchildren the agreement to transfer the land could not be carried out, and suggested that the homestead be sold by means of a bill in chancery for partition; that the note for $4000 given to appellant be turned over to him, to be destroyed when the decree for partition was entered. There appears to have been no dispute as to these meetings, but there is a dispute in the evidence as to whether or not an agreement was had, as contended by appellant. Appellees testified that they did not agree to the partition or authorize anyone to agree to it for them. The record shows that a purported memorandum of agreement was signed by Crangle, and by C. G. Hirschi, an attorney representing certain of the grandchildren. It was as follows:

"Anna's $4,000.00 note to be delivered to Crangle to be destroyed when Sandell land is partitioned. Henning Anderson to throw in the partition the garage and barn on the Sandell 80.

"The 25 acres in Sec. 25 T. P. 28 N. R. 11 to be let alone.

"Other land to be partitioned.

"Rent to be collected by admr.

"Aug. 13, 1919, Crangle's office in Watseka, Ill.

F. M. CRANGLE,
C. G. HIRSCHI."

Appellant contends that all parties agreed that this memorandum should be signed in the manner in which it was signed, as representing all the parties in interest, and that Crangle should proceed, by a bill in partition, to secure the sale of the eighty acres of land. This is denied by appellees. On the next day after this meeting, appellant

by her counsel filed the original bill herein, in which she sought to have the deed to appellees set aside on the ground of mental incompetency of the grantor and undue influence of appellees, and prayed for partition of the premises. This bill made no reference to an agreement for family settlement.

Courts of equity favor the settlement of family disputes by agreement rather than by resorting to the courts, and will specifically enforce a contract made in settlement of such differences where it is capable of being enforced and is signed by all of the heirs-at-law, where none of them are under any disability and where there is no misunderstanding or fraud, (*Cole* v. *Cole,* 292 Ill. 154,) yet it is likewise true that there must be such a contract. The fact that equity courts favor the adjustment of family difficulties by agreement does not afford equity jurisdiction to order specific performance where the alleged contract is not, in fact, a contract or is one not capable of performance. Contracts to devise or convey real estate are enforced by specific performance on the ground that the law cannot do perfect justice. A contract, to be so enforced, must be for a valuable consideration, reasonably certain as to its subject matter, stipulations and purposes, and must be equitable and just. (*Edwards* v. *Brown,* 308 Ill. 350; 4 Pomeroy's Eq. Jur. secs. 1401-1405.) A contract for the conveyance of real estate, to be enforceable under the Statute of Frauds, must be in writing, or must be so far performed by one party as to take it out of that statute. (*Edwards* v. *Brown, supra.*) Where such a contract is signed by an agent, the authority of the agent must be in writing. (*Mitchell* v. *Chicago Art Institute,* 269 Ill. 381; *Kopp* v. *Reiter,* 146 id. 437; *Bissell* v. *Terry,* 69 id. 184.) There is in this case no evidence that either Crangle or Hirschi had any authority, in writing, to sign the memorandum, if it could be held sufficient to form the basis of a contract. Appellees deny that they even agreed that they should sign it, and both Crangle

317—12

and Hirschi testified that they did not represent the Andersons as agents or attorneys.

It is evident from a reading of the memorandum that in order to render it intelligible parol evidence must be taken. Such a contract, if partly in writing and partly in parol, cannot be specifically enforced where it does not appear that there has been such a part performance thereof as to take it out of the Statute of Frauds. The evidence does show that the appellant turned over to her attorney, Crangle, the note for $4000 which her father in his lifetime had executed to her. She testified, however, that she had not filed it as a claim against the estate because she was waiting to see the outcome of this litigation. The note has not been canceled nor returned to the estate. It is in the hands of her attorney.

Much testimony was taken on the mental competency of John V. Sandell. The chancellor found that the charges of incompetency of Sandell and of undue influence on the part of appellees were not sustained. Under the views already stated it is not necessary to discuss the testimony as to that matter. It is not here urged that the chancellor erred in so finding. This is an action seeking specific performance of an alleged contract of settlement of family disputes. The competency of the deceased father could be material only for the purpose of aiding the claim that there was a dispute as to the rights of his descendants in his property by showing his condition as the basis of the claims of one of the disputants. The amended bill is based on an agreement to partition.

There is no error in the record, and the decree will be affirmed.                    *Decree affirmed.*