(No. 24628.—)
NELLIE MACADAM *et al.* Appellees, *vs.* HERBERT L. BOWEN *et al.* Appellants.

*Opinion filed June 21, 1938—Rehearing denied October 5, 1938.*

DONALD KIRKPATRICK, and LEE J. QUASEY, for appellants.

THOMAS J. WELCH, GEORGE W. HUNT, VERA M. BINKS, and MARTIN E. O'CONNOR, guardian *ad litem,* for appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Appellants here seek review of a decree entered by the circuit court of Henry county on April 23, 1937, ordering partition and sale of certain real estate.

George Bowen died intestate on July 31, 1925, seized of 285 acres of farm land in Bureau and Henry counties, a homestead residence in Kewanee and a substantial amount of personal property. He left surviving as his only heirs-at-law his widow, Roxana, his children, Nellie MacAdam, Herbert L. Bowen and John Bowen, and three grandchildren, Emily, Dorothy and Georgia Garrison, only children of a deceased daughter, Dolly Garrison. The widow, Roxana, made no election to take dower, administered on her husband's estate and made a final report and distribution thereunder. By operation of law the widow, therefore, became seized of an undivided one-third interest in fee in the land and homestead in the residence property, while Nellie, Herbert and John each became seized of an undivided one-sixth, and Emily, Dorothy and Georgia each an undivided one-eighteenth portion of the real estate. On November 19, 1925, Roxana made her will by which she devised her entire estate to the plaintiff, Nellie MacAdam. The testatrix died January 22, 1929, and her will was admitted to record in Henry county on April 1, following. This will was never contested.

Nellie MacAdam's bill for partition was filed to the June term, 1930, of the circuit court of Henry county. She alleged that she, as an heir of George Bowen, and the sole devisee of Roxana Bowen, was entitled to an undivided one-half, Herbert L. and John Bowen each an undivided one-sixth, and Emily, Dorothy and Georgia each an undivided one-eighteenth interest in the real estate owned by her father at his death. Herbert L. and John Bowen answered the bill. They denied plaintiff's right to partition, but claimed, if she

was entitled to it, that her interest was only one-fourth by reason of a family-settlement contract dated January 24, 1927. They also filed a cross-bill based on this contract and prayed for an accounting, the ascertainment of the interests of all the parties, and for partition. To this cross-bill, plaintiff filed an answer alleging the purported contract was not a binding agreement on any of the signatories thereto, and that it neither enlarged nor diminished the interests of any of the parties in the real estate. Answers to the original and cross-bills were filed by the three Garrison children. Emily Garrison is under disability. She was adjudged insane prior to January 24, 1927. She was represented by a guardian *ad litem*. Dorothy and Georgia were minors at the date of the purported contract but have since reached their majority. The master to whom the cause was referred found that after the death of the widow, Roxana, plaintiff had executed an instrument agreeing to give to her nieces, Emily, Dorothy and Georgia, one-third of the net estate which she received under the will of her mother, Roxana, to be divided among them equally. He further found that plaintiff was not bound by the terms of the alleged family-settlement, found her interest in the real estate to be as alleged in her bill, modified by her agreement with her three nieces, and that the interests of the parties were as follows: Nellie, an undivided twenty-one fifty-fourths, Herbert L. and John, each an undivided nine fifty-fourths and Emily, Dorothy and Georgia, each an undivided five fifty-fourths. He recommended partition accordingly. The decree entered by the chancellor followed the findings and recommendations of the master, denied the prayer of the cross-bill, except that portion which prayed for partition and accounting, and retained jurisdiction for the purposes of the accounting.

The sole question involved is: Did Roxana Bowen's one-third interest in the real estate pass under the family-settlement contract to her children and grandchildren? The agreement in question purports to be the result of a meeting

of all the heirs of George Bowen, deceased, except the three children of Dolly Garrison. It bears the signatures of Roxana, Nellie, Herbert L. and John, as well as the signature of the attorney for Roxana, as administratrix of her husband's estate. It is not signed by the three granddaughters nor by anyone for them, although the agreement, by express terms, purports to make them parties.

The instrument in question is long and informal and no useful purpose can be served by setting it out. It provided for cancelation of debts owing to the estate of George Bowen from his adult heirs and a debt from the deceased daughter, Dolly Garrison, estimated at $3200, for rent of an 80-acre tract during her lifetime. It provided additional income for the support of the widow, Roxana, and provided that certain lands placed in trust by their grandfather for Herbert L. and John Bowen should be treated as a part of the George Bowen estate, but that if partition was sought by any of George Bowen's heirs, the lands so held in trust were to be taken out of the George Bowen estate. Nellie MacAdam was made secretary and treasurer for the heirs. She was to collect rents, pay taxes and make distribution of the net proceeds. At Roxana's death the estate was to be divided in four equal shares. The agreement mentions a debt of $2500 due her father's estate from Nellie MacAdam, a note for $1000 from Herbert on file in the father's estate, a debt of $1100 due the estate from John, and $750 that the two boys had borrowed together from the administratrix. All these debts were supposed to be canceled. Dolly Garrison's debt estimated at $3200, and, with interest, at $6000, could not be charged against her three children's interest in the real estate they took by descent from their grandfather, George Bowen, when he died intestate subsequent to the death of their mother.

Cross-complainants introduced in evidence two reports of receipts and disbursements from the lands. One covered the time from January 19, 1927, to May 1, 1927, and showed

a distribution of the net balance to the heirs as follows: Roxana, one-third, Herbert L., Nellie and John, each one-sixth, Emily, Dorothy and Georgia, each one-eighteenth. This report did not include any income from the "trusteeship" lands. The other report is from May 1, 1927, to March 9, 1928. It apparently includes rents from the "trusteeship" lands and shows distribution of the net income to the heirs on the same basis.

Appellants contend (1) that the settlement contract was valid and binding upon all those who signed it; (2) that it benefited the minor heirs and their signatures were therefore unnecessary; and (3) that the plaintiff has accepted benefits under and recognized the validity of the agreement and is, therefore, estopped from asserting contrary rights.

The argument of appellants proceeds upon the assertion that this court favors family-settlement contracts and will enforce them in all proper cases; that this is such a contract and is binding upon the plaintiff; that the effect of the contract was to transfer the one-third interest of Roxana in the real estate, and, therefore, her will did not pass any title to that interest to plaintiff. This court does favor family-settlement contracts fairly entered into, and will enforce performance of them in all proper cases, yet no case has been brought to our notice which goes so far as to uphold the validity of such a contract where it was not signed by all the parties to it, where three of the parties to the contract were legally incapable of executing it.

In *Hagen* v. *Anderson*, 317 Ill. 173, we said: "Courts of equity favor the settlement of family disputes by agreement rather than resorting to the courts, and will specifically enforce a contract made in settlement of such differences where it is capable of being enforced and is signed by all of the heirs-at-law, where none of them are under any disability and where there is no misunderstanding or fraud, (*Cole* v. *Cole*, 292 Ill. 154,) yet it is likewise true that there must be such a contract. The fact that equity courts

favor the adjustment of family difficulties by an agreement does not afford equity jurisdiction to order specific performance where the alleged contract is not, in fact, a contract or is one not capable of performance." In *Lockner* v. *VanBebber*, 364 Ill. 636, which among other things involved a family contract not to partition certain real estate during the period specified by its terms, we said: "It is conceded by all parties to this suit that the contract to refrain from filing partition proceedings was ineffective, since Ruth VanBebber did not sign in her own capacity and had no authority to sign as guardian for her minor son."

It is clear that under the provisions of the instant contract the daughters of Dolly Garrison, deceased, were necessary parties, and the contract in plain language made them parties. They could not be bound by a contract which they did not sign and which, by reason of disability, they were incapable of executing. Nor does the record show that the contract was for the benefit of the three grandchildren nor that their interest would be promoted by sustaining it.

For the reasons indicated the plaintiff was not estopped from bringing her suit. The decree of the trial court was right, and it is affirmed.

*Decree affirmed.*