HELEN B. CULBERTSON, Plaintiff-Appellant, *v.* ROY P. CARRUTHERS *et al.,* Defendants-Appellees.

Fifth District   No. 78-1

Opinion filed October 5, 1978.—Rehearing denied November 13, 1978.

George H. Huber, of Vandalia, for appellant.

Hughie G. Craig, of Greenville, for appellees.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Plaintiff, Helen Culbertson, appeals from an order of the circuit court of Fayette County denying her suit for partition of 107 acres located in said county and ordering her to convey her interest in the property to Roy Carruthers, the defendant. Defendant had originally filed two separate suits for specific performance of an alleged oral contract to convey as well as a counterclaim in the instant action. In the interest of judicial economy the two separate suits were dismissed and plaintiff was allowed leave to file an amended complaint to which defendant filed an affirmative defense based upon the alleged oral contract. No specific action was ever taken on the defendant's counterclaim to plaintiff's original petition.

A review of the background of this suit is essential to understand the action taken by the trial court. Plaintiff, defendant and 10 other individuals, are the children of Ima and Claude Carruthers, who originally purchased the 107-acre tract in question. By deed dated June 25, 1952, the parents conveyed the property in fee to their children in equal one-twelfth shares, each grantor reserving a life estate therein. Claude Carruthers died in June of 1967, followed by Ima who died March 14, 1975. After the funeral on March 16, 1975, the entire family gathered at the homestead. The eldest son and executor of the estate, Richard Carruthers, read their mother's will in which she expressed a desire that the estate be settled by agreement of the surviving children and that the real estate be sold to one of the children, if any were desirous of purchasing it. It is undisputed that at that time Roy Carruthers, who had been farming the 107-acre tract since 1965 pursuant to a year-to-year lease, offered to buy the remaining eleven-twelfths of the property for $600 per acre. What is not clear, however, is whether a contract was

created between Roy and his 11 brothers and sisters at the time of the March 6, 1975, meeting. Letters of either confirmation of the contract or acceptance of the offer were requested to be sent to Richard Carruthers by June 1, 1975. Written documents were forthcoming from all of the defendant's siblings except Daniel and Richard who nevertheless executed quitclaim deeds of their interests on August 25, 1975.

On April 5, 1975 plaintiff wrote a letter to Richard and Roy Carruthers, the pertinent part of which provided:

> "I really don't want to sell my land, but! since I am in the middle of the family I shall accept your offer on my part of the land providing I keep the coal, oil and mineral rights for ten years.
>
>        * * *
>
> I shall not sign this deed until the coal, oil and other mineral rights are stated on it; * * *."

On April 19, 1975, Ray Carruthers responded in a similar letter containing the same conditions as to coal, oil and mineral rights. Sometime after Ima Carruthers' death the Carter Oil Company exercised a pre-existing option to purchase the coal rights underlying the 107-acre tract so that this interest is no longer a subject of dispute; however, the question as to the ownership of the oil, gas and mineral rights survived.

On May 21 and 23, 1975, Richard and Roy visited Ray and Helen, respectively, to personally obtain the latter's signatures on the deed. They were unsuccessful. At that time plaintiff informed defendant that she would prefer to pay a lawyer rather than accept his offer and thereby lose the valuable coal, oil and mineral rights in her portion of the land. Roy Carruthers testified that immediately after the March 16, 1975, family gathering, he took possession of the premises as owner. In April or May of 1975 he sought a $48,000 loan from the Ramsey National Bank with which to purchase the remaining eleven-twelfths of the 107-acre tract. The loan, which was granted on September 23, 1975, and recorded September 24, 1975, was secured by a mortgage on ten-twelfths of the 107-acre tract in question and on 40 acres separately owned by Roy and his wife. Defendant testified that he made repairs of a permanent nature on the barn roof in June and July of 1975 and on the chicken house during the following month.

On November 14, 1975 plaintiff filed a petition requesting that the court partition the interests in the 107-acre tract. Ray Carruthers was named as a party defendant to this action and appeared pro se at the trial level. He did not file a brief in this court, however. Thereafter, on January 13, 1976, defense counsel sent letters to Helen Culbertson and Ray Carruthers purporting to accept the terms of their offers to sell contained in the letters sent to defendant the previous April. Payment was again tendered to and refused by Helen and Ray. On January 30, 1976, Ray Carruthers conveyed to plaintiff Helen Culbertson his one-twelfth of the

property, reserving in himself the coal, oil and mineral rights for a period of 10 years.

On February 8, 1977, the cause came for trial in the circuit court of Fayette County. The parties stipulated to the authenticity of various documents which together with plaintiff's pleadings made out a prima facie case for partition. Following defendant Roy Carruthers' presentation of evidence in support of his affirmative defense, the case was taken under advisement until February 17, 1977. On that date the court filed its order and memorandum opinion in which it specifically found that the equities were with the defendant and that the family settlement doctrine in conjunction with the doctrine of part performance would apply to remove the oral contract from the statute of frauds. Plaintiff was ordered to convey her two-twelfths interest in the property, including the coal, oil and mineral rights, to the defendant. In addition, the interest retained by Ray Carruthers was transferred to the defendant by operation of the court's decree. A check payable to Helen Culbertson and Ray Carruthers in the amount of $10,700 representing the sale price of $600 per acre was declared to be on file in the office of the court clerk. After considering plaintiff's supplemental motion to reconsider, the court entered an amended decree on September 19, 1977, which provided that plaintiff be allowed to retain an undivided one-twelfth interest in the oil and gas underlying the premises for a period of 10 years from January 30, 1976, the date on which she purchased Ray Carruthers' one-twelfth interest in the premises, excluding coal, oil and mineral rights. The amended decree specifically incorporated the court's memorandum opinion filed February 17, 1977. This appeal ensued.

Plaintiff contends, *inter alia*, that the trial court erred in finding that the doctrine of part performance and the policy favoring family settlements removed the oral contract from the statute of frauds. Deferring for a moment a discussion of the merits of this argument, we note at the outset that the application of any of these doctrines presupposes the existence of an agreement. *Brunette v. Vulcan Materials Co.*, 119 Ill. App. 2d 390, 256 N.E.2d 44; *Hagen v. Anderson*, 317 Ill. 173, 177, 147 N.E. 791; 11 Ill. L. & Prac. *Compromise and Settlement* §2 (1977); *Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.*, 42 Ill. App. 3d 865, 356 N.E.2d 837, 840.

In its memorandum opinion filed February 17, 1977, the trial court held that "the deeds and letters executed by the various heirs were absolute acceptances of the offer made by Roy G. Carruthers with the exception that two of the heirs expressed a desire to reserve the coal, oil and minerals underlying the tract for a period of ten years." The memorandum further recited that during the March 16 meeting all of the 12 children agreed "without exception" that Roy Carruthers' offer to purchase the land at $600 per acre should be accepted. The court

characterized the forthcoming letters as confirmations of the March 16 oral acceptance.

Whether or not an agreement was made in this instance necessarily involves questions of fact as well as questions of law, both of which are reviewable by this court. (Ill. Rev. Stat. 1977, ch. 110A, par. 366(b).) However, there were only minor discrepancies in the testimony of those examined as to the substance of the conversations which occurred at the March 16, 1975 meeting. For example, Richard Carruthers testified that immediately following Roy's offer he, Richard, asked if anyone objected. As no objections were then raised, Richard requested that the offerees "send me a letter stating their acceptance or make any counter-offer, offer, that since it was being offered to the family." The witness later stated that all 10 orally assented to the offer and that in his opinion the mood of the group was serious. Mary Ann Wintler, one of plaintiff's and defendant's sisters, stated that when the offer was made, she thought she needed to consult with a few of the others since she had not kept abreast of land values throughout the years. According to Ms. Wintler, no one accepted the offer immediately. Claude Carruthers, a brother of plaintiff and defendant, testified that he did not agree to sell on March 16, 1975, but accepted in writing some time that April. Indeed, Roy Carruthers himself was equivocal as to the precise statements made by each party to the alleged contract. He explained: "I asked for them to consider and most of them granted that they would accept the offer; and some thought it was too high and wondered how come so much, but all of them agree with the fact that they accepted the offer." Defendant further testified that he felt his status changed from tenant farmer to that of owner when his brothers and sisters "gave their acceptance to the offer in writing * * * [a]long about May 1." While not determinative of the outcome, this latter statement tends to show the intent of the parties at the time of the March 16, 1975, meeting.

Plaintiff and Roy Carruthers indicated at trial that they understood that an offer had been made on March 16 but that acceptances or counter-offers were to be made in writing prior to May 1, 1975. In addition, Helen Culbertson testified that the offer was hurriedly made and that she made no serious comments by way of accepting the offer at that time. The foregoing represents the entire testimony adduced at trial regarding the events which occurred on March 16, 1975.

The following language of the supreme court in *Hagen v. Anderson,* 317 Ill. 173, 147 N.E. 791, is especially pertinent at this point:

> "Courts of equity favor the settlement of family disputes by agreement rather than by resorting to the courts, and will specifically enforce a contract made in settlement of such differences where it is capable of being enforced and is signed by all of the heirs-at-law, where none of them are under any disability

and where there is no misunderstanding or fraud, [citation omitted] yet it is likewise true that there must be such a contract. The fact that equity courts favor the adjustment of family difficulties by agreement does not afford equity jurisdiction to order specific performance where the alleged contract is not, in fact, a contract or is one not capable of performance." 317 Ill. 173, 177.

■■ In determining whether an oral agreement to convey was reached by all concerned on March 16, 1975, the court must consider not only the surrounding circumstances but also the parties' intent which may be inferred from those circumstances as well as what was said or not said at the time. The brothers and sisters in this case had gathered together for the purpose of reading their deceased mother's will. Although the land in question did not pass under its terms, the precatory language of the will stated a desire that the real estate which was part of the estate remain under the sole ownership of one of the children. At that point defendant Roy Carruthers offered to purchase the one-twelfth interest of each of his 11 brothers and sisters for the sum of $600 per acre. No additional terms were mentioned. Responses from each offeree were requested in writing. At least one of the offerees admitted she had no knowledge of current land values in the area at the time. Real estate transactions are often the most complex contracts since they frequently involve oil, gas and mineral rights as well. Yet no mention was made of this aspect of the sale until the written responses by plaintiff and defendant Ray Carruthers several weeks later. Under these circumstances it is unreasonable to conclude that an offer and binding acceptance were reached among the parties at the March 16 family reunion. It is imperative in this regard to differentiate between preliminary negotiations and binding agreements encompassing definite terms. While we agree that on March 16 the parties may have expressed a mutual desire that the property be kept in the family through sole ownership by Roy Carruthers, this expression of desire may not under the facts of this case be translated into a binding contract. Thus, we believe that the trial court's conclusion that an oral agreement to convey was entered into on that date was contrary to the manifest weight of the evidence. As mentioned earlier, the doctrines of part performance and family settlements have no application absent an agreement. Aside from this, however, these doctrines are inapplicable to the instant case for still other reasons.

■■ Part performance which will take a parol contract out of the statute of fraud is rooted in the equitable concept of reliance. When one party to an oral contract has so far performed his part of the agreement that to allow the other party to invoke the statute of frauds would perpetrate a fraud upon him, chancery will intervene to enforce the contract. However, it is clear that one of the prerequisites in such a case is that the

performance must be in reasonable reliance upon the contract. (*Brunette v. Vulcan Materials Co.*, 119 Ill. App. 2d 390, 256 N.E.2d 44.) The trial court found that defendant's acts in executing and delivering a mortgage to his property established sufficient part performance to remove the contract from the statute of frauds. The court did not consider, however, that defendant's acts—execution of the September 1976 mortgage as well as repair of the property from June through August 1975—were performed subsequent to plaintiff's refusal to convey her property. Indeed, as early as May 23, 1975, plaintiff informed defendant Roy Carruthers and their brother Richard that she would prefer to hire a lawyer than to accept the price offered for her interest in the property. Thus, defendant's part performance could not have been undertaken in reasonable reliance on the alleged contract.

In granting defendant's counterclaim in this case, the trial court relied heavily upon the "family settlement doctrine." In fact, the court recited in its memorandum opinion that "[i]f this were a case between strangers who were dealing at arm's length, it might be that the plaintiff would prevail in this suit." While the application of this doctrine may produce contrary results in a given case depending upon the family relationship of the parties, an oral agreement to dispose of real estate nevertheless remains within the ambit of the statute of frauds absent part performance or one of the other recognized exceptions thereto. (Annot., 29 A. L. R. 3d 174, 184 (1970).) Without expressing an opinion as to whether this doctrine is restricted to situations involving a decedent's estate, we note simply that in most instances the doctrine is applied to settlements involving property either passing through intestacy or by virtue of a will. (See Ill. Rev. Stat. 1977, ch. 110½, pars. 6—11, 9—2.) As mentioned previously, the 107-acre tract in question was not included in Ima Carruthers' estate but was owned in joint tenancy by the 12 children, subject only to her life estate. Were we to approve of this court's broad application of the family settlement doctrine, it could be invoked any time family members become involved in litigation concerning real estate. Finally, by ultimately allowing plaintiff and Ray Carruthers to retain the oil and mineral rights in their share of the property, application of the family settlement doctrine to this case could well produce more discord than harmony among the remaining nine brothers and sisters who for the same price conveyed to Roy Carruthers their respective rights to the oil and minerals beneath the land.

■■■ The court also declared in its memorandum opinion that the letters sent by plaintiff and Ray Carruthers in response to the March 16 offer constituted absolute acceptances of said offer. We disagree. The language employed expressly conditioned acceptance upon the authors' retention of the coal, oil and mineral rights for 10 years. Under basic contract principles this qualification rendered the purported acceptance a

rejection and counteroffer (Restatement of Contracts §60 (1932); Corbin, Contracts §82, at 130-31 (1952); *Worley v. Holding Corp.*, 348 Ill. 420, 181 N.E. 307), not, as found by the trial court, an acceptance coupled with a request that the authors be entitled to the additional rights for a period of 10 years. Nor can these letters be construed as sufficient memoranda to save the alleged oral contract from the operation of the statute of frauds. The writing relied upon to take a contract out of the statute of frauds must itself show the existence of such a contract and its terms and conditions. (20 Ill. L. & Prac. *Statute of Frauds* §73 (1956).) The letters on their faces demonstrate that no agreement had yet been reached. If in fact the letters constituted memoranda of the alleged contract, there would have to be some evidence that prior to April 5 and April 19, 1975, defendant had agreed to the conditions therein set forth. This was not the evidence.

■■ The trial court's final resolution of the dispute awarded the controversial oil and mineral rights to plaintiff and Ray Carruthers. If this were intended by the court as an approval of defendant's purported acceptance in January of 1976 of plaintiff's and Ray Carruthers' counteroffers, we disagree that such a contract could be created at that time. If an offer prescribes no time for acceptance, a reasonable time will be implied. (*Johnson v. Whitney Metal Tool Co.*, 342 Ill. App. 258, 96 N.E.2d 372.) While we believe plaintiff's letter of April 5, 1975, and Ray Carruthers' letter of April 19, 1975, were counteroffers, a purported acceptance some nine months later and some two months after plaintiff had filed a suit for partition of the premises cannot be said to be timely acceptance under the circumstances of this case. In fact, Ray Carruthers testified that he considered his offer to have lapsed at the expiration of 30 days.

In summary, we believe that the trial court's finding that an oral contract to convey was reached among the 12 brothers and sisters at the March 16, 1975, meeting is contrary to the manifest weight of the evidence. Moreover, we believe the court erred when it held that the doctrine of part performance coupled with the policy favoring family settlements justified the removal of the alleged contract from the statute of frauds. Because of our disposition of these issues, we need not consider plaintiff's other assignments of error.

For the foregoing reasons the judgment of the circuit court of Fayette County is reversed and the cause is remanded with directions to grant plaintiff's suit for partition of the described premises.

Reversed and remanded with directions.

KARNS and JONES, JJ., concur.