## Horace Quinn v. Stark County Telephone Company.

### Gen. No. 4,514.

1. SPECIFIC PERFORMANCE—*when verbal agreements, within Statute of Frauds, will be enforced.* Specific performance of verbal agreements will be decreed on the ground that part performance takes them out of the operation of the Statute of Frauds only where there had been such acts of performance by the party seeking to enforce the agreement that the parties cannot be restored to their original relative positions, and the situation is such that to permit the defendant to invoke the statute intended to prevent fraud would be, in effect, to make it an engine of fraud.

2. SPECIFIC PERFORMANCE—*when verbal agreement for telephone service within Statute of Frauds will not be enforced.* A verbal contract to furnish telephone service at a specified rate which is within the Statute of Frauds will not be specifically enforced notwithstanding it appears that in consideration of such agreement the complainant had rendered services and made a contribution in connection with the establishment of the telephone system.

Bill for injunction, etc. Appeal from the Circuit Court of Stark County; the Hon. THEODORE N. GREEN, Judge, presiding. Heard in this court at the April term, 1905. Affirmed. Opinion filed August 1, 1905.

WRIGHT & WRIGHT, for appellant.

ALLEN P. MILLER, for appellee.

MR. JUSTICE FARMER delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court dismissing appellant's bill. The bill prayed that appellee be enjoined from discontinuing appellant's telephone service and for the specific performance of a contract between it and appellant. The substance of the contract as set out in the bill is, that about December, 1900, appellee, wishing to extend its telephone lines, agreed with appellant that if he would assist in the enterprise by contributing $40 in cash and five days' labor in the construction of the lines, appellee would furnish him a telephone instrument, service and privileges at his residence for twenty years, or as long as the company was in existence, upon his paying the company the sum of $6 per year in quarter yearly installments. The bill further alleges appellant performed the five days' labor, paid the $40 cash, that the line was constructed and telephone service furnished appellant about two years in accordance with the agreement, he paying $6 per year in quarterly installments, when appellee demanded $10.20 per year payable in quarterly installments, and now threatens and is about to remove his telephone instrument and discontinue the service unless he pays the increased charge. A demurrer to the bill was sustained and the bill dismissed. It is conceded by appellant that the contract being a verbal one, was therefore, within the Statute of Frauds, but it is

insisted there was such part performance of it as to take it out of the operation of the statute.

While it is true part performance will, in equity, some-times take a contract out of the operation of the Statute of Frauds, an examination of the authorities will, we believe, show that this case does not fall within that class of cases.

Appellant places much reliance on Western Union Tel. Co. v. C. & P. R. R. Co., 86 Ill. 246, as authority to sustain the bill and his right to the relief prayed. In that case the railroad company had about completed its road from Streator to Altamont and had begun the erection of poles for a telegraph line, when negotiations were opened with the telegraph company looking to the adoption of the telegraph line by that company. These negotiations resulted in the drawing up of a contract in writing which was signed by the officers of the telegraph company containing the terms and provisions under which the line was to be completed and operated, and the privileges and bene-fits the railroad company, its officers and employees, were to receive from it. One of the provisions of the writing was that the railroad company, so far as it legally might, assured the telegraph company the exclusive right of way along its line and lands, and agreed to discourage competition by withholding facilities and assistance from competing lines. A copy of the paper signed by the telegraph company was forwarded to the railroad company. Upon its receipt, Ralph Plumb, vice-president and general manager of the railroad company, wrote the general superintendent of the telegraph company suggesting a slight addition to the contract, and stated with that change, "We accept the terms named in the draft of the contract furnished, and ask your company to do the same." On receipt of the letter, the telegraph company immediately notified the railroad company of its acceptance of the contract with the alteration as requested. The telegraph company proceeded at once to complete the line, and had it in working order by June, 1874. The draft of the contract received by the railroad company appears to have

been lost by it and it never was in fact signed by the company. The line was operated by the telegraph company in accordance with the writing and alteration suggested by Mr. Plumb, from its completion until August, 1875, when the railroad company gave permission to the Atlantic & Pacific Telegraph Company to string a wire upon the poles along the line of the railroad, which it was engaged in doing when the Western Union Telegraph Company filed a bill to enjoin such use of the poles. The railroad company defended on the ground that the contract purported to give the telegraph company a monopoly of the telegraph business along its line of railroad, and also on the ground that it had never executed the contract, and claimed that the agreement between the companies, therefore, was not in writing and set up the Statute of Frauds. The Supreme Court held, first, that the letter of Plumb was a sufficient signing within the statute, and second, "that the contract is taken out of the statute by the mutual execution of its terms and provisions, on the principle of part performance."

To maintain the bill in this case would be to hold that appellant could compel the specific performance of the contract. The equitable doctrine that specific performance of verbal agreements will be decreed on the ground that part performance takes them out of the operation of the Statute of Frauds, is applied to cases where there have been such acts of performance by the party seeking to enforce the contract that the parties cannot be restored to their original relative positions, and the situation is such that to permit the defendant to invoke the statute, intended to prevent fraud, would be in effect to make it an engine of fraud. 26 Am. & Eng. Ency. of Law, pp. 51 and 54; 29 Am. & Eng. Ency. of Law, pp. 846 and 847.

The rule as defined by our Supreme Court in Barrett v. Geisinger, 148 Ill. 98, is: "The basis upon which the doctrine of partial performance rests is, that when a verbal contract has been made, and one party has knowingly aided or permitted the other to go on and do acts in part

performance of the agreement, in full reliance upon such agreement as a valid and binding contract, and which would not have been done without the agreement, and are of such nature as to change the relations of the parties, and to prevent a restoration to their former condition, or an adequate compensation for the loss by a judgment at law for damages, then it would be a virtual fraud in the first party to interpose the Statute of Frauds as a bar to the completion of the contract, and thus secure for himself all the benefits of the acts already done in part performance, while the other party would not only lose all advantage from the bargain, but would be left without adequate remedy for its failure, or compensation for what he had done in pursuance of it. To prevent the success of such a palpable fraud, equity interposes under these circumstances, and compels the entire completion of the contract, by decreeing its specific execution."

In the Western Union Telegraph case the Supreme Court held that whether the provisions of the agreement relating to the telegraph company having the exclusive use of the right-of-way, and the discouragement of competition by the railroad company, were valid as a whole or not, so far as the contract excluded competition by the use of the poles occupied by the Western Union Company, when direct injury to the working of its line might result, it was not void. A large number of expert witnesses testified that injury would result to the Western Union Company's line and their use from the stringing and use of another line of wire on the poles of the Western Union Company by another telegraph company, and it can readily be seen if this were so and it were allowed to be done, the Western Union Company would have no remedy that would afford it adequate relief. We think that case falls within the rule laid down by our Supreme Court above quoted. This case, however, does not fall within that rule. The authorities are abundant to the effect that while in an action at law a party cannot recover on a contract within the Statute of Frauds, he may recover for money paid,

property delivered or services rendered in accordance with, and upon the faith of the contract. Crabtree v. Welles, 19 Ill. 55; Wm. Butcher Steel Works v. Atkinson, 68 Ill. 421; Frazer v. Howe, 106 Ill. 563; Leavitt v. Stern, 159 Ill. 526; 29 Am. & Eng. Ency. of Law, pp. 836, 838, 839 and 842.

We are of opinion the decree of the Circuit Court was in accordance with the law, and it is affirmed.

*Affirmed.*