YORKVILLE NATIONAL BANK *et al.*, Plaintiff-Appellee, *v.* OSCAR SCHAEFER *et al.*, Defendant-Appellant.

Second District    No. 78-140

Opinion filed April 19, 1979.

138

Dominic Mancini, of Palmer, Blackman & Mancini, of Hinsdale, for appellant.

Charles J. Myler and Donald J. Fabian, both of Ruddy, Myler & Bartsch, of Aurora, for appellee.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

This is on appeal from a judgment of the Circuit Court of Kendall County, after a bench trial. The court found in favor of the plaintiff, Yorkville National Bank, and against the defendant, Oscar Schaefer, on

the issue of whether Schaefer had pledged certain securities for a loan by the bank to the Monarch Foundry.

Plaintiff's complaint sought a declaratory judgment construing its rights in securities previously delivered to the bank by Schaefer. These securities, worth approximately $150,000, were delivered on January 28, 1974, in conjunction with a "Hypothecation Agreement" signed by Schaefer. Schaefer also granted the bank an irrevocable power of attorney for each security delivered. The hypothecation agreement authorized Monarch Foundry Company, of which Schaefer was a major stockholder, director, and officer, to pledge securities as "collateral to secure any present or future indebtedness" of Monarch Foundry. The agreement further provided that the bank was "to pursue basic value of Monarch Foundry before utilization of stock collateral in payment of its debt." Although the hypothecation agreement refers to securities "described below," it does not contain any description of securities.

On February 8, 1974, the bank executed a loan to Monarch Foundry for $550,000. The note accompanying this loan stated that the payment was secured by a real estate trust deed. No mention was made of the securities previously delivered to the bank.

Subsequent to the loan, Schaefer sought and received from other Monarch shareholders a "Guarantee" that if Schaefer suffered any personal loss because of his pledging of securities to secure the Monarch loan, the other parties would share his loss. On March 21, 1974, Schaefer filled out and signed Federal Reserve Form U-1 for stock secured loans. On this form, he admitted that he had "pledged certain securities for a loan to Monarch Foundry Company proceeds of which were applied to payment of corporate debts arising in the ordinary course of business."

In June of 1974 Monarch went into default on its loan. By May 10, 1976, all of the assets of Monarch were liquidated. Liabilities, however, totalling approximately $350,000 remained owing to Yorkville National Bank. This action was then brought by the bank to determine its rights in the stock certificates.

The trial court found, *inter alia*, that the hypothecation of the securities in question was a partial consideration for the granting of the $550,000 loan, that the hypothecation agreement referred to the delivered stock, that the bank fulfilled its condition of pursuing the basic value of Monarch Foundry, that the debt owed the bank far exceeded the value of the securities in question, that the bank is entitled to dispose of the securities and apply their value to the remaining debt and that the bank is entitled to any dividends and/or interest accruing to these securities after May 10, 1976, the date on which the bank fulfilled its condition in the hypothecation agreement of pursuing all remedies against Monarch Foundry.

On appeal, defendant raises a number of issues including the applicability of the Statute of Frauds, the fact that the hypothecation agreement does not expressly pledge the securities although it authorizes Monarch to do so, the formalities for creating a security interest under article 9 of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 9—203), and the standards for a trial court's ruling on a defendant's motion for judgment at the close of plaintiff's evidence.

After reviewing the record and considering the arguments of all parties, we affirm the judgment of the trial court.

■■ Defendant argues that under the Statute of Frauds (Ill. Rev. Stat. 1973, ch. 59, par. 1) the debt of another must be evidenced by a writing. He asserts that the hypothecation agreement is not a sufficient writing to satisfy the Statute. These assertions overstate the Statute's reach. Under the Statute of Frauds, no particular form of language is required as long as the intention of the parties can be established. (*Lipkin v. Koren* (1946), 392 Ill. 400, 407, 64 N.E.2d 890, 894.) A writing may satisfy the Statute even though it is not in and of itself the contract in question. (*Holsz v. Stephen* (1936), 362 Ill. 527, 532, 200 N.E. 601, 603.) A series of writings can be taken together to comply with the Statute. (*Mladich v. McEneely* (1918), 212 Ill. App. 435.) Moreover, "[a]n admission in writing of the bargain having been made" may satisfy the Statute. *Ullsperger v. Meyer* (1905), 217 Ill. 262, 266, 75 N.E. 482, 483.

■■ The agreement in the present case is evidenced by a series of writings: the hypothecation agreement signed when the stocks were delivered, the signed powers of attorney given to the bank, and the admissions contained in Federal Reserve Form U-1 and the guarantee agreement with the defendant's fellow shareholders. Taken together, these writings *overwhelmingly support the trial judge's finding* that the requirements of the Statute of Frauds were satisfied.

■■ Moreover, even if, *arguendo*, the requirements of the Statute were not formally met, the courts of Illinois recognize that the Statute is not "available as a defense when there is sufficient performance by one party in reliance upon the agreement." (*Anastaplo v. Radford* (1958), 14 Ill. 2d 526, 537-38, 153 N.E.2d 37, 43.) While this performance doctrine was first developed in the context of land sales contracts, it has also been applied in cases where an advancement of funds has been made in reliance upon a suretyship promise. *Grundy County National Bank v. Westfall* (1973), 13 Ill. App. 3d 839, 301 N.E.2d 28.

Apart from the Statute of Frauds, defendant's major contention is that the hypothecation agreement was not itself a pledge; it merely authorized Monarch to pledge the delivered stock and Monarch never acted upon this authorization. Under the Uniform Commercial Code, there are three requirements for a valid pledge: the collateral must be "in

the possession of the secured party pursuant to agreement," value must be given, and the debtor must have rights in the collateral. (Ill. Rev. Stat. 1973, ch. 26, par. 9—203.) Here there is no dispute that the defendant had rights to securities, that value was given by the bank, and that the bank had possession of the securities. The issue is if this possession was "pursuant to agreement."

■ Defendant contends that the sole agreement concerning the delivery of the stock was the hypothecation agreement authorizing Monarch to pledge the securities. However, the hypothecation agreement cannot be viewed in isolation. The delivery of the securities in conjunction with this agreement, the granting of irrevocable powers of attorney to the bank for the securities, and the statements on Federal Reserve Form U-1 and the guarantee agreement all indicate defendant's clear intention to pledge the securities as collateral for the loan. While on its face the hypothecation agreement speaks in terms of an "authorization" to pledge the securities and the form receipt given the defendant made reference to "safekeeping," the totality of the evidence shows that their delivery was a pledge and was a partial consideration for the loan to Monarch. The evidence overwhelmingly supports the plaintiff's contention and the trial court's conclusion that the delivery of the stock to the bank was not merely for safekeeping.

Defendant's argument must fail in light of the surrounding circumstances. When key documents are ambiguous,

> " '[t]he intention of the parties is to be determined from the language employed, when read in the light of the context of the instrument and such surrounding circumstances as will aid the court in arriving at the true meaning of the parties.' " (*Claude Southern Corp. v. Henry's Drive-In, Inc.* (1964), 51 Ill. App. 2d 289, 299, 201 N.E.2d 127, 132, quoting from *MacAndrews & Forbes Co. v. Mechanical Manufacturing Co.* (1937), 367 Ill. 288, 297, 11 N.E.2d 382.)

It is clear from the documents in evidence and the testimony of the parties, that the defendant agreed to pledge the securities to guarantee the loan to Monarch Foundry. Yorkville National Bank acquired a valid security interest by pledge in the securities as all the requirements under the Uniform Commercial Code were met.

Defendant's final objections need only brief mention. The right to the interest and the dividends from the subject securities is inherently tied to the ownership of the securities themselves. (19 Am. Jur. 2d *Corporations* §890.) Plaintiff's prayer for relief sought a declaratory judgment "construing and determining the rights of the bank in and to the pledged securities * * *." Defendant was clearly on notice that plaintiff's claim involved the dispute over rights "in and to" particularly described

securities. Once basic ownership rights were settled, the right to interest and dividends would naturally follow. The basic requirement that a pleading must "reasonably" inform the opposite party has been met. Ill. Rev. Stat. 1977, ch. 110, par. 42(2).

The trial court found that as of May 10, 1976, the bank fulfilled the basic condition in the hypothecation agreement that the bank first pursue the basic value of Monarch Foundry. By this date, all assets of the foundry had been liquidated with the remaining indebtedness still far exceeding the value of the pledged securities. The evidence fully supports the trial court's conclusion that as of this date the securities were no longer the property of the defendant and could then have been legally liquidated by the bank. Indeed, although the bank has not made claim to interest and dividends prior to May 10, 1976, under article 9 of the Uniform Commercial Code it had a right to hold as additional security all dividends and interest from January 28, 1974, the date of the initial pledge. (Ill. Rev. Stat. 1973, ch. 26, par. 9—207(2)(c); see also Ill. Ann. Stat., ch. 26, par. 9—207, Illinois Code Comment, subsection (2), par. (c), at 135 (Smith-Hurd 1974).) Thus there is no question that the bank is entitled to all dividends and/or interest from the securities after May 10, 1976.

Finally, the defendant argues that the trial court erroneously denied defendant's motion for judgment in his favor at the close of plaintiff's evidence. Defendant is correct in his contention that under section 64(3) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 64(3)) the trial court when sitting without a jury must *not* consider the evidence in a light most favorable to the plaintiff but must, instead, "weigh the evidence" including any evidence favorable to the defendant. (*Hawthorn Melody Farms Dairy, Inc. v. Rosenberg* (1973), 11 Ill. App. 3d 739, 743-44, 297 N.E.2d 649, 653.) However, the defendant here has not shown in any way that the trial court failed to correctly weigh the evidence. To the contrary, our review of the record and the trial court's findings shows that all evidence was weighed fairly. The judgment of the trial court is affirmed.

Affirmed.

SEIDENFELD and WOODWARD, JJ., concur.