D. W. GIBBONS *et al.*, Plaintiffs-Appellants, v. RAYMOND S. STILLWELL *et al.*, Defendants-Appellees.

Fifth District   No. 5—85—0341

Opinion filed November 5, 1986.

HARRISON, J., specially concurring.

Gary E. Peel, of Edwardsville, and Jay Sushelsky, of St. Louis, Missouri, for appellants.

Al J. Pranaitis, of Hoagland, Maucker, Bernard & Almeter, of Alton, for appellees.

JUSTICE JONES delivered the opinion of the court:

The plaintiffs, D. W. Gibbons and Carolyn Dee Gibbons, husband and wife, brought suit for legal malpractice against the defendants, Raymond S. Stillwell and Emert L. Wyss, Jr. The action arose out of legal advice rendered by the defendants concerning the rights of plaintiff D. W. Gibbons against the Alton Banking and Trust Company (hereafter referred to as the bank) concerning an alleged oral agreement to loan him $275,000 at a rate of interest of 12¾% for a term of 20 years. The trial court entered judgment in favor of the defendants on the third amended complaint. This appeal followed in which the sole issue for review is whether the trial court erred in finding that the third amended complaint failed to state a cause of action against the defendants.

Although both D. W. Gibbons and Carolyn Gibbons sought relief in the complaint and the amended complaints up to and including the second amended complaint, D. W. Gibbons was the only plaintiff in the third amended complaint, which is the subject of this appeal. In that complaint the plaintiff alleged that in the fall of 1978 he had formulated a plan involving a real estate development in or near Alton and had retained the defendants concerning the matter. Thereafter he sought funding from the bank for the proposed development. He alleged that the bank had agreed to lend him $275,000 at a rate of interest of 12¾% for a term of 20 years, the money to be advanced by the bank as the plaintiff needed it for the project. The third amended complaint, to which we shall refer as the complaint, alleged:

> "GIBBONS accepted said offer of financing from bank and GIBBONS and his spouse on February 21, 1979[,] executed a mortgage to bank giving bank a second mortgage on their home and security in other GIBBONS' properties for the purpose of securing said loan. GIBBONS and his spouse further to induce bank to finance GIBBONS' real estate development and further to assist bank in securing the financing executed a land trust and appointed [the Bank] as Trustee of said land trust with full power to borrow funds on behalf of said Trust and to pledge any and all assets of said Trust to secure loans advanced to the Trust."

A copy of a mortgage dated February 21, 1979, attached to the complaint as Exhibit A, indicates that it was recorded on January 17, 1980. The copy of the mortgage, signed by David William Gibbons and Carolyn Dee Gibbons, states that David William Gibbons, Sr., and Carolyn Dee Gibbons, husband and wife, are indebted to the bank as trustee as evidenced by a promissory note in the sum of $275,000 with interest at a rate of 12¾% due and payable on March 1, 1999. The complaint alleged further:

"At the time bank agreed to finance GIBBONS' Project according to the terms set forth hereinabove, GIBBONS requested bank to furnish to him a written commitment to make a loan to him in the amount of Two Hundred Seventy-five Thousand and 00/100 Dollars ($275,000) at Twelve and Three-Quarters Percent (12-¾%) interest for a term of twenty (20) years. Bank then indicated to GIBBONS that it was bank's policy not to furnish written commitments of the sort requested by GIBBONS but that GIBBONS could rely on bank's promise to lend said sums on the terms stated. Bank further indicated to GIBBONS that the mortgage document dated February 21, 1979, exhibited hereto as Exhibit A, constituted a sufficient writing to memorialize bank's commitment to make the loan on the terms indicated."

The complaint alleged that in reliance upon the bank's commitment to make the loan as specified the plaintiff proceeded to purchase real estate and to expend other sums related to the development project. In reliance upon the bank's commitment, the complaint charged, the plaintiff changed his position materially, expending substantial effort and expense in reasonable reliance on the bank's promise.

According to the complaint, the bank made "loan advances" to the plaintiff for expenditure on the development project, but when the plaintiff sought the "second advance" of funds on about September 7, 1979, the bank informed him that it was unwilling to lend the money requested on the terms set forth above but would lend him money at a higher rate of interest that would vary with the bank's prime rate of interest. The complaint alleges that the bank further informed him that no mortgage in the amount and for the terms stated had ever existed. According to the complaint:

"GIBBONS consulted DEFENDANT STILLWELL and sought advice as to whether or not any independent proof of bank's earlier commitment to lend him the necessary funds at the Twelve and Three-Quarters Percent (12-¾%) fixed rate existed, and whether GIBBONS had any rights against bank to enforce

the fixed rate commitment above described. STILLWELL undertook investigation and research in order to ascertain whether or not evidence of said commitment did exist, and whether GIBBONS had any right to enforce the initial fixed rate long term commitment by bank.

10. STILLWELL advised GIBBONS that no mortgage commitment from GIBBONS to bank evidencing the loan commitment above described could be proved to exist and that GIBBONS should come to some compromise agreement with bank since so much had already been undertaken by GIBBONS and he stood already at great risk of efforts and funds for his commercial real estate Project. Attorney STILLWELL did then and there advise GIBBONS to abandon any claim that the original mortgage from GIBBONS to bank evidenced a commitment by bank to finance GIBBONS' Project on fixed terms. STILLWELL purportedly based his advice to GIBBONS on the ground that no legal theory supported enforcement of a loan commitment not in writing containing the terms allegedly promised by bank to GIBBONS."

In reliance upon the defendant Stillwell's advice, the plaintiff borrowed additional funds from the bank at higher rates of interest. The bank subsequently filed one or more lawsuits against D. W. Gibbons and "ultimately foreclosed on GIBBONS' Project." Defendant Stillwell represented the plaintiff in these matters. The complaint enumerates several ways in which the defendant attended negligently and carelessly to these matters and alleges actual and punitive damages totaling $3,500,000.

The defendants moved for judgment in their favor on the pleadings. The trial court in its judgment stated that "[t]he gist of the Defendant's Motion is that the alleged loan commitment agreement was unenforceable because of Section 1 of the Statute of Frauds (Ill. Rev. Stat. ch. 59, par. 1) in that it would be an oral contract not to be performed within a year." The court found without merit the plaintiff's allegations and arguments that there had been partial performance so as to take the alleged oral agreement by the bank out of the Statute of Frauds (Ill. Rev. Stat. 1985, ch. 59, par. 1). From the face of the complaint, the court said, neither the bank nor the plaintiffs fully performed the agreement involving the loan and repayment of the sum in question for a term of 20 years. On the basis of *Sinclair v. Sullivan Chevrolet Co.* (1964), 45 Ill. App. 2d 10, 195 N.E.2d 250, *aff'd* (1964), 31 Ill. 2d 507, 202 N.E.2d 516, the trial court found that the facts pleaded and argued by the plaintiffs concerning their detri-

mental reliance on the bank's alleged loan commitment were insufficient to take the alleged agreement out of the Statute of Frauds. In conclusion the court found further "that the legal advice allegedly given by Defendants to Plaintiffs that the alleged loan commitment agreement of the [Bank] was unenforceable was proper legal advice under the circumstances as pleaded herein and, as a matter of law, cannot support a claim of legal malpractice or legal negligence against Defendants."

Section 1 of the Statute of Frauds provides in pertinent part:

> "That no action shall be brought *** to charge any person upon any agreement *** that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized." (Ill. Rev. Stat. 1985, ch. 59, par. 1.)

In his brief, relying principally upon *Anastaplo v. Radford* (1958), 14 Ill. 2d 526, 153 N.E.2d 37, the plaintiff contends that in Illinois partial performance of an oral contract removes the contract from the Statute of Frauds when one party has relied to his detriment on the contract. *Anastaplo*, however, was a suit for equitable relief, namely, an injunction. Although it has been held that acts of part performance are sufficient, in a court of equity, to take an oral agreement out from under the operation of the Statute of Frauds (*Rose v. Dolejs* (1953), 1 Ill. 2d 280, 116 N.E.2d 402; *Ellison v. Ellison* (1939), 372 Ill. 323, 23 N.E.2d 718; *Winans v. Bloomer* (1926), 321 Ill. 76, 151 N.E. 599), partial performance of an oral contract does not take an action of law from the operation of the Statute of Frauds (*Wheeler v. Frankenthal & Brothers* (1875), 78 Ill. 124; *Brown Oil Co. v. Whitmore Chevrolet Sales, Inc.* (1972), 5 Ill. App. 3d 481, 283 N.E.2d 338; *Scoville v. Dehart* (1958), 17 Ill. App. 2d 419, 150 N.E.2d 369; *Westgate v. City of Aurora* (1923), 229 Ill. App. 84; *Sterenberg v. Beach* (1920), 219 Ill. App. 68; *Peck v. McCormick Harvesting Machine Co.* (1900), 94 Ill. App. 586, *aff'd* (1902), 196 Ill. 295, 63 N.E. 731; *Butler v. Shehan* (1895), 61 Ill. App. 561). As was stated in *Quinn v. Stark County Telephone Co.* (1905), 122 Ill. App. 133, 136-37:

> "The equitable doctrine that specific performance of verbal agreements will be decreed on the ground that part performance takes them out of the operation of the Statute of Frauds, is applied to cases where there have been such acts of performance by the party seeking to enforce the contract that the par-

ties cannot be restored to their original relative positions, and the situation is such that to permit the defendant to invoke the statute, intended to prevent fraud, would be in effect to make it an engine of fraud. [Citations.]

The rule as defined by our Supreme Court in Barrett v. Geisinger [(1893),], 148 Ill. 98, is: 'The basis upon which the doctrine of partial performance rests is, that when a verbal contract has been made, and one party has knowingly aided or permitted the other to go on and do acts in part performance of the agreement, in full reliance upon such agreement as a valid and binding contract, and which would not have been done without the agreement, and are of such nature as to change the relations of the parties, and to prevent a restoration to their former condition, or an adequate compensation for the loss by a judgment at law for damages, then it would be a virtual fraud in the first party to interpose the Statute of Frauds as a bar to the completion of the contract, and thus secure for himself all the benefits of the acts already done in part performance, while the other party would not only lose all advantage from the bargain, but would be left without adequate remedy for its failure, or compensation for what he had done in pursuance of it. To prevent the success of such a palpable fraud, equity interposes under the circumstances, and compels the entire completion of the contract, by decreeing its specific execution.' "

■■ It is fundamental that the aid of equity can be invoked only in the absence of an adequate legal remedy. (*White v. City of Ottawa* (1925), 318 Ill. 463, 149 N.E. 521; *Eveland v. Board of Education* (1950), 340 Ill. App. 308, 92 N.E.2d 182.) Despite the merger of law and equity in our modern court system, equitable relief will not be granted where there is an otherwise adequate remedy at law. (*Ives v. Town of Limestone* (1978), 62 Ill. App. 3d 771, 379 N.E.2d 394; *cf.* 37 C.J.S. *Statute of Frauds* sec. 249, at 757 (1943) (where it is stated: "The equitable doctrine [of part performance] is not made available in an action at law merely by reason of the facts that a statute permits both legal and equitable causes of action to be united in one complaint or that in an action at law plaintiff may have the benefit of the doctrine of estoppel").) In the instant case the plaintiff had an adequate remedy at law for damages against the bank and, for that reason, would not have been entitled to seek equitable relief. The doctrine of part performance would have had no application to an action at law for damages and, hence, could not have operated to take the alleged

oral agreement out of the Statute of Frauds.

■■ Plaintiffs' alleged oral contract with the bank was not for the purchase of a particular piece of property or for delivery of any sort of unique item. Rather, it involved a commitment to make a loan of money at a specified rate of interest. When the bank reneged on the alleged agreement, the plaintiffs elected to draw down additional loan moneys from the same bank at an increased rate of interest. Thus, the bank did perform, although not in the manner plaintiffs contend they should have performed. Nevertheless, the situation presented would be one that would readily lend itself to the remedy of an action at law, an action against the bank for damages in an amount easily determined by simple mathematical calculation. Suffice it to say that the situation presented was not one for invoking equitable relief and the doctrine of part performance would play no part.

The plaintiff has not suggested that either party to the alleged contract had fully performed the terms of the agreement. All except one of the cases cited and discussed by the plaintiff, with regard to his contention that partial performance by parties to an oral agreement will take the agreement out of the Statute of Frauds, involved equitable relief. The case that does not involve equitable relief, *Grundy County National Bank v. Westfall* (1973), 13 Ill. App. 3d 839, 845, 301 N.E.2d 28, 32, was decided, not on the basis of the doctrine of part performance , but on the basis of the rule that "the courts will not permit the Statute of Frauds, the only purpose of which is to prevent fraud, to be used where the effect will be to accomplish a fraud, and if the facts are such that it would be a virtual fraud to permit the defendant to interpose the statute, a court will not listen to that defense."

■■ In his brief the plaintiff makes no assertion that the mortgage of February 21, 1979, served as a memorandum of the alleged oral agreement, and, therefore, we do not consider that question. Neither do we consider whether the doctrine of equitable estoppel would be a viable issue, for the plaintiff has not suggested its applicability. In order to invoke that doctrine there must be words or conduct amounting to a misrepresentation or concealment of a material fact; although fraudulent intent is not essential to the doctrine, these considerations have prevented its application where an individual is charged with having failed to comply with an oral agreement rendered unenforceable by the Statute of Frauds. (*Sinclair v. Sullivan Chevrolet Co.* (1964), 45 Ill. App. 2d 10, 195 N.E.2d 250.) Plaintiff has made no allegation that the bank was guilty of any misrepresentation or concealment in its dealings.

The defendants maintain in their brief on the basis of *Sinclair v. Sullivan Chevrolet Co.* (1964), 45 Ill. App. 2d 10, 195 N.E.2d 250, that the nature of the part performance alleged by the plaintiff did not constitute performance of the alleged oral agreement, part performance of which, they argue, would have to have been the repayment of money to the bank at 12¾% interest rather than undertake development of the real estate project for which the loan had been sought. In as much as the doctrine of part performance does not take an action at law from the Statute of Frauds, the nature of the part performance alleged is irrelevant, and we need not address this argument of the defendants.

■ Since the alleged oral agreement would have been within the Statute of Frauds, the defendants' advice that it was unenforceable was, as the trial court found, proper legal advice under the circumstances as pleaded. In an action for legal malpractice, the plaintiff must prove that the defendant attorney owed the plaintiff a duty of due care arising from the attorney-client relationship, that the defendant breached that duty, and that as a proximate result the plaintiff suffered injury. (*Sexton v. Smith* (1986), 112 Ill. 2d 187, 492 N.E.2d 1284.) Here, since the defendants' advice was proper legal advice no breach of the defendants' duty of reasonable care to the plaintiff could have occurred, and, as the trial court found, the defendants' advice could not support a claim of legal malpractice against them. Thus, the trial court did not err in finding that the third amended complaint failed to state a cause of action against the defendants.

Affirmed.

WELCH, J., concurs.

JUSTICE HARRISON, specially concurring:

I concur in the result reached by Justice Jones, but write separately because I do not agree with his explanation as to why the doctrine of part performance has no application on the facts present here. Justice Jones implies that the doctrine may be invoked to remove *any* oral contract from the Statute of Frauds where the party who has partly performed cannot be compensated at law and the requisites for equitable relief are present. I do not read the doctrine so broadly.

As defendant has suggested, part performance is properly understood under the common law in Illinois to apply only where a party seeks specific enforcement of an oral contract to convey land or an

interest in land. *Anastaplo v. Radford* (1958), 14 Ill. 2d 526, 153 N.E.2d 37, the leading case on the doctrine, concerns such a conveyance. So too did the decision by this court in *Culbertson v. Carruthers* (1978), 66 Ill. App. 3d 47, 383 N.E.2d 618. (See also *Ellison v. Ellison* (1939), 372 Ill. 323, 23 N.E.2d 718; *Winans v. Bloomer* (1926), 321 Ill. 76, 151 N.E. 599; see generally 37 C.J.S. *Statute of Frauds* sec. 249, at 758 (1943).) The dispute before us now, however, pertains, not to an agreement to convey land, but to a contract to lend money which is not to be performed within one year. Contracts not to be performed within a year are not ordinarily taken out of the Statute of Frauds by part performance. (20 Ill. L. & Prac. *Statute of Frauds* sec. 93, at 62 (1956).) Part performance is therefore of no aid to plaintiffs here.

I am aware that *Grundy County National Bank v. Westfall* (1973), 13 Ill. App. 3d 839, 301 N.E.2d 28, and *Yorkville National Bank v. Schaefer* (1979), 71 Ill. App. 3d 137, 388 N.E.2d 1312, each cited the part performance rule of *Anastaplo v. Radford* (1958), 14 Ill. 2d 526, 153 N.E.2d 37, in contexts other than oral contracts to convey realty. In my view this was error. Where specific enforcement of an oral contract to convey land is not at issue, the doctrine which may pertain is equitable estoppel, not part performance. These doctrines are based on certain common principles and are frequently confused, as illustrated here by the trial court's reliance on *Sinclair v. Sullivan Chevrolet Co.* (1964), 45 Ill. App. 2d 10, 195 N.E.2d 250, *aff'd* (1964), 31 Ill. 2d 507, 202 N.E.2d 516, an equitable estoppel case. The doctrines are not, however, the same (see 73 Am. Jur. 2d *Statute of Frauds* sec. 566 (1974)), although admittedly the distinction between them has not been clearly delineated by Illinois courts. In any event, as Justice Jones points out, plaintiff in this case has chosen not to suggest the applicability of equitable estoppel, and we need not consider whether it would be a viable basis for enforcement of the oral contract in dispute here.