Thomas P. **FISCHER**, Plaintiff–
Appellant,

v.

**FIRST CHICAGO CAPITAL MAR-
KETS, INC.**, Defendant–Appel-
lee.

No. 98–2656.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 9, 1998.

Decided Sept. 20, 1999.

John R. Cromer (argued), Harrison & Moberly, Indianapolis, IN, Alan J. Mandel, Chicago, IL, for Plaintiff–Appellant.

Jill A. Centella (argued), First National Bank of Chicago, Chicago, IL, for Defendant–Appellee.

Before FLAUM, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

First Chicago Capital Markets, Inc. (FCCM) hired Thomas P. Fischer to serve as a consultant on a new securitization program. When FCCM refused to pay compensation to which Fischer believed he was entitled, Fischer filed this diversity suit, alleging breach of contract and a variety of quasi-contract claims. The district court dismissed Fischer's complaint for failure to state a claim upon which relief may be granted. For the reasons discussed below, we reverse and remand.

**I**

Because the district court dismissed under Federal Rule of Civil Procedure 12(b)(6), we recite the facts as Fischer presented them in his complaint. In April 1995, Fischer approached Ken Vallrugo, then the Managing Director at FCCM, with a proposal to help FCCM develop a Healthcare Accounts Receivables Securitization Program (the "Program"). Vallrugo was enthusiastic about the proposition, and he and his supervisor, Senior Managing Director Thomas Campbell, entered into negotiations with Fischer. On May 25, 1995, while their discussions were ongoing, Campbell authorized Fischer to begin work on the Program, and Fischer did so. Shortly thereafter, on July 11, the parties signed a letter of understanding entitled "Consulting Agreement." That document reflected Fischer's agreement to market, originate, and implement the Program from May 25, 1995 to December 31, 1995, subject to early termination or extension by mutual agreement. In exchange, FCCM promised to pay Fischer $12,500 each month (representing 96 hours of work at $130 per hour) for the term of the contract. The Agreement concluded with the following paragraph, which is the crux of the current dispute:

> Tom, as we have discussed, we will determine referral fees on a case by case basis. If the Program is successful, we hope to move from this arrangement to an ongoing consulting arrangement on a fee basis that will be paid by Program participants. The following administrative services will need to be performed going forward: (1) the initial calculation and the ongoing (annual) monitoring of the "average useful life" of assets financed in accordance with federal tax guidelines; (2) the monitoring and implementation of annual updated hospital board of directors' resolutions ...; (3) the coordination, accumulation and dissemination of information to First Chicago on a quarterly basis; (4) coordination with First Chicago to insure Program effectiveness; and (5) assistance to First Chicago with the marketing of new and/or expanded programs. We are thinking at this time of a sliding fee scale for such services from between 8 basis points per annum and 5 basis points based on the size of the Program, but this agreement will be worked out in the future when both of us know how the Program is working

and the feasibility of continuing our work together.

Between May and December 1995, Fischer performed his obligations under the Agreement. The parties then agreed to extend the hourly fee arrangement to June 1996, and Fischer continued to work on behalf of the Program. During this period, Fischer completed the start-up process and initiated the Program with bond issues totaling $32 million: a $16 million, 20–year bond issue by the St. Francis Healthcare System and a $16 million, 27–year bond issue by ServantCor. At FCCM's request, Fischer continued to service and market the program from June 1996 through March 1997, despite the fact that his hourly fee arrangement had terminated upon completion of the start-up efforts. As a result of his post-June endeavors, Fischer obtained a lucrative new participant, the Daughters of Charity National Healthcare System, for the Program.

Despite the promising start, the relationship between Fischer and FCCM soured. Beginning in June 1997 (after both Vallrugo and Campbell had left the company), Fischer repeatedly invoiced FCCM for $25,600, his first year's compensation. Fischer, who believed he was entitled to an annual fee based on the size and dollar amount of the Program's bond issues, reached this figure by multiplying eight basis points by $32 million, the amount of outstanding bonds in the Program. FCCM eventually responded with a letter dated August 5, 1997, that announced that FCCM was terminating the contract and that it was willing to give Fischer a one-time payment of $16,000, or five basis points times $32 million, but no more. Maintaining that he was entitled to an annual fee for the duration of the bond issues, Fischer rejected the offer and filed suit.

## II

■ Applying Illinois law, which both parties agree governs this case, the district court dismissed Fischer's suit. The court held that the contested paragraph was not sufficiently definite and certain to be an enforceable contract. Instead, "the final paragraph simply preserved the parties' positions for future negotiations." The court also rejected Fischer's alternative theory of recovery, the doctrine of promissory estoppel. The court found that Fischer was unable to show detrimental reliance separate from the performance that supplied the consideration for the written agreement, as required by Illinois law, and because recovery under a promissory estoppel theory was defeated by the Illinois statute of frauds. Because the district court resolved these issues on a motion to dismiss, our review is *de novo*. *Hentosh v. Herman M. Finch University of Health Sciences/Chicago Medical School*, 167 F.3d 1170, 1173 (7th Cir.1999).

On appeal, Fischer concedes that FCCM did not breach the written agreement. He argues, however, that the parties entered into a subsequent oral agreement that entitles him to payment. According to Fischer, both before and after the July 11, 1995 letter, Vallrugo assured him that after the hourly fee arrangement concluded, Fischer was to continue to market and service the Program in exchange for basis points for the life of the St. Francis and ServantCor bonds.

■ FCCM does not challenge Vallrugo's authority to bind it. Instead, it argues that the parol evidence rule bars Fischer from introducing evidence of the alleged oral agreement. But the parol evidence rule applies only to agreements made prior to or contemporaneous with the signing of a written contract; it does not bar evidence tending to show later modifications of the contract. *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1394–95 (7th Cir.1991); see also *Barille v. Sears Roebuck & Co.*, 289 Ill.App.3d 171, 224 Ill.Dec. 557, 682 N.E.2d 118, 123 (1997); *Vuagniaux v. Korte*, 273 Ill.App.3d 305, 210 Ill.Dec. 38, 652 N.E.2d 840, 844 (1995).

That Vallrugo allegedly made the same promises to Fischer both before and after the execution of the written agreement does not render the subsequent assurances inadmissible. The facts as alleged by Fischer suggest merely that he and Vallrugo later resolved an issue left open by the Agreement.

■ Fischer has a significantly larger problem, however, in the form of the statute of frauds. Although the parol evidence rule does not prevent the parties from orally modifying their contract subsequent to its signing, the Illinois statute of frauds precludes enforcement of a services contract that cannot be performed within a year "unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith." 740 ILCS 80/1; see also *Monetti, S.P.A. v. Anchor Hocking Corp.*, 931 F.2d 1178, 1180–81 (7th Cir.1991); *Evans v. Fluor Distribution Companies, Inc.*, 799 F.2d 364, 365–66 (7th Cir.1986). Fischer alleges that the parties orally modified their contract to conform to the last paragraph of the July 11, 1995 letter. After that oral modification, the agreement provided for an "ongoing consulting relationship" under which FCCM was to pay Fischer an annual fee for the duration of the St. Francis and ServantCor bonds in exchange for continuing administrative services. Because the bonds will last 20 and 27 years, respectively, Fischer obviously cannot service these bonds within one year. He seeks to avoid this difficulty by arguing that FCCM may compensate him for 27 years' work within the first year by paying him the present value of what he would have earned over time. This solves only half the problem because regardless of whether FCCM can perform in one year, Fischer cannot.

■ Moreover, although Fischer performed his servicing obligations without pay for nine months before FCCM terminated the contract, this partial performance does not take the oral agreement outside of the statute of frauds. Under the partial-performance exception to the statute of frauds, it must be impractical to compensate the performing party for only the value of the partial performance. *Prodromos v. Howard Savings Bank*, 295 Ill. App.3d 470, 229 Ill.Dec. 718, 692 N.E.2d 707, 712 (1998); see also *Monetti* 931 F.2d at 1184 ("The partial-performance exception to the statute of frauds is often explained (and its boundaries fixed accordingly) as necessary to protect the reliance of the performing party, so that if he can be made whole by restitution the oral contract will not be enforced."). Accordingly, the partial performance exception is not applicable to a normal employment contract such as the one here. *Prodromos*, 692 N.E.2d at 712, citing *Mariani v. School Directors of Dist. 40*, 154 Ill.App.3d 404, 107 Ill.Dec. 90, 506 N.E.2d 981, 983 (1987). As we explain in a moment, Fischer has an adequate extracontractual remedy under the theory of *quantum meruit*. Moreover, the partial performance exception is an equitable remedy and therefore is unavailable to Fischer, who seeks only money damages. See *Vuagniaux*, 210 Ill. Dec. 38, 652 N.E.2d at 844; *Dickens v. Quincy College Corp.*, 245 Ill.App.3d 1055, 185 Ill.Dec. 822, 615 N.E.2d 381, 385 (1993), citing *Gibbons v. Stillwell*, 149 Ill. App.3d 411, 102 Ill.Dec. 864, 500 N.E.2d 965, 969 (1986). The district court therefore correctly concluded that the alleged oral agreement is unenforceable under the statute of frauds.

■ As an alternate theory of liability, Fischer argues that he is entitled to recover under the doctrine of promissory estoppel. To state a claim for promissory estoppel in Illinois, Fischer must allege: (1) an unambiguous promise; (2) reasonable and justifiable reliance by the party to whom the promise was made; (3) the reliance was expected and foreseeable by the promisor; and (4) the promisee relied upon the promise to her detriment. *A–Abart Elec. Supply, Inc. v. Emerson Elec. Co.*, 956 F.2d 1399, 1404 (7th Cir.1992).

To that end, Fischer maintains that both before and after the July 11 Agreement, Vallrugo promised him that once the Program was implemented, his hourly compensation would cease, and he would begin receiving an annual fee starting at eight basis points per annum for the life of the bonds initially implementing the program. FCCM used the promise to induce him to service and market the program for no hourly compensation from June 1996 until it terminated the contract in August 1997, and, with FCCM's knowledge, he did indeed service and market the program without hourly compensation. Moreover, because he serviced and marketed the program after June 1996 without compensation, he relied to his detriment on Vallrugo's promise.

■ The district court believed that Fischer was unable to satisfy the detrimental reliance prong because "the performance which is said to satisfy the requirement of detrimental reliance is the same performance which supplied the consideration for the contract," precluding an action for promissory estoppel. See *Prentice v. UDC Advisory Services, Inc.*, 271 Ill.App.3d 505, 207 Ill.Dec. 690, 648 N.E.2d 146, 151 (1995) ("Promissory estoppel cannot be based upon a promise which only induces plaintiffs to do that which they were already bound to do."). We disagree. As we understand Fischer's allegations, FCCM promised him the annual fee based upon his continuing provision of administrative services over the life of the bonds. That he continued to service and market the program after June 1996—after his hourly compensation agreement ceased—is enough to demonstrate detrimental reliance.

■ Once again, however, Fischer's claim ultimately fails, because the district court's alternate theory for rejecting promissory estoppel—the statute of frauds—was sound. Under Illinois law, the statute of frauds is applicable to a promise claimed to be enforceable by virtue of the doctrine of promissory estoppel.

*Architectural Metal Systems, Inc. v. Consolidated Systems, Inc.*, 58 F.3d 1227, 1231 (7th Cir.1995), citing *First Nat. Bank v. McBride*, 267 Ill.App.3d 367, 204 Ill.Dec. 676, 642 N.E.2d 138, 142 (1994), and *Dickens*, 615 N.E.2d at 386. The fact that Fischer cannot perform the promised services within one year precludes recovery under a promissory estoppel theory.

■ Even though the two theories under which Fischer might have received, in essence, a full loaf were properly rejected, Fischer is not entirely out of luck. The nonenforceability of the alleged oral agreement under either traditional contract principles or the doctrine of promissory estoppel leaves open the possibility of recovering, in a sense, half a loaf (or more accurately much less than half a loaf), under *quantum meruit*, a form of restitution. See *Monetti*, 931 F.2d at 1183. Count II of Fischer's complaint specifically requests "[a]n amount to fairly compensate him for his services based upon the time and skill involved, and the amount [by which] FCCM has been unjustly benefited and enriched." Although Fischer did not make specific reference to this theory in his briefs on appeal, his general argument is that the complaint stated claims on which relief could be granted, which in this one respect is correct. Furthermore, FCCM did not argue waiver. Because our review is plenary, and because Fischer does argue that FCCM knowingly accepted his services without paying for them, we are satisfied that Fischer has not forfeited this point.

■ To be successful on a *quantum meruit* theory under Illinois law, Fischer must prove (1) performance of services, (2) the reasonable value of the services, and (3) the receipt by the defendant from the plaintiff of a benefit which it would be unjust to retain without paying compensation. *North American Lighting, Inc. v. Hopkins Mfg. Corp.*, 37 F.3d 1253, 1259 (7th Cir.1994), citing *Van C. Argiris & Co. v. FMC Corp.*, 144 Ill.App.3d 750, 98 Ill.

Dec. 601, 494 N.E.2d 723, 725–26 (1986) and *O'Neil & Santa Claus, Ltd. v. Xtra Value Imports, Inc.*, 51 Ill.App.3d 11, 8 Ill.Dec. 78, 365 N.E.2d 316, 319 (1977); see also *Johnson v. Gudmundsson*, 35 F.3d 1104, 1114 (7th Cir.1994). In his complaint, Fischer alleges that for nine months after June 1996, he performed marketing and administrative services for FCCM without compensation and that it would be unjust for FCCM to retain these benefits. These allegations properly state a claim under the Illinois law of *quantum meruit*. We therefore remand the case to the district court for further proceedings on this claim, bearing in mind that Fischer has alleged that his services included both the administration of the St. Francis and ServantCor bonds and the marketing of the Program to the Daughters of Charity National Healthcare System.

■ As a final note, we mention the possibility that, should Fischer prevail in the end, it is at least possible that he may recover less than the $75,000 required to confer federal diversity jurisdiction. 28 U.S.C. § 1332(b). This would obviously not affect the court's jurisdiction, see *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 277, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Pratt Central Park Ltd. Partnership v. Dames & Moore, Inc.*, 60 F.3d 350, 351 (7th Cir.1995), but it may trigger the cost-shifting rules found in 28 U.S.C. § 1332(b).

For the foregoing reasons, we REVERSE and REMAND for further proceedings consistent with this opinion.