ROBERT P. CHAPMAN, Plaintiff and Appellee and Counterdefendant and Cross-Appellant, v. FREEPORT SECURITIES COMPANY, Defendant-Appellant and Counterplaintiff (Jack W. Chapman *et al.*, Defendants and Cross-Appellees).

Second District   No. 2—87—1167

Opinion filed September 23, 1988.

Karl F. Winkler, of Rockford, for appellant.

Thomas E. Laughlin, of Connolly, Oliver, Close & Worden, of Rockford (Robert J. Oliver, of counsel), for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Robert Chapman, initiated this action by filing a three-count complaint. Count I was against Freeport Securities Company (corporation) claiming compensation was owed him for two years and five months on a three-year employment contract. Count II was against Jack W. Chapman (Jack), and count III was against Marilyn C. Tibbits (Marilyn). Both of these counts were for interference with contractual relationship between plaintiff and the corporation. The corporation counterclaimed against plaintiff for damages it claimed it sustained both before and after his resignation. The trial court found for plaintiff on his compensation claim, against plaintiff on counts II and III, and found against the corporation on its counterclaim. The corporation appeals the judgment against it and for plaintiff on both the complaint and counterclaim. Plaintiff appeals the trial court's holding as to counts II and III. We reverse in part and affirm in part.

C. W. Chapman had organized the corporation and was its president until his death on April 2, 1980. C.W.'s children, plaintiff, Jack, and Marilyn, owned 646 of the 891 shares of Freeport Securities Company. The remaining shares were owned by 29 shareholders.

Eight days after C.W.'s death, Jack, Marilyn, and plaintiff made plaintiff president of the corporation, and attorney Richard Eckert was subsequently elected to the board.

Approximately one month prior to the annual meetings of the stockholders and the board of directors, Eckert and plaintiff discussed plaintiff's presidency. Eckert suggested that plaintiff ask for an employment contract with the corporation for a number of years. He also suggested that plaintiff might seek an incentive agreement, one that paid plaintiff a base salary and a percentage of company earnings if plaintiff's efforts produced more income.

Plaintiff made up a schedule on yellow legal paper which listed three salary options and had a chart at the bottom which compared the options given various profits. He and Eckert discussed the proposals shown so that Eckert could propose them at the annual meeting. Neither of them discussed the proposals with Jack or Marilyn prior to the

board meeting. The proposal was not in any notices of the meeting.

After the stockholders meeting on January 27, 1981, the four directors met in Eckert's conference room. Eckert was elected corporate secretary, plaintiff was made president, and Jack was voted vice-president.

A 1980 financial statement was distributed and copies of plaintiff's schedule of options were handed around. Eckert explained that he thought it was in the best interest of the corporation for plaintiff to have a written contract as president. He also advocated a percentage arrangement as in the corporation's interest since such an arrangement would give plaintiff more money as he produced more money for the corporation. Marilyn testified that plaintiff said any of the three proposals outlined were agreeable to him and that each would pay him approximately $75,000 in 1981.

What happened after this is in dispute. All agree there was discussion of the proposal. They all agree that a three-year contract was the length of time discussed. They all agree Eckert suggested the third option on plaintiff's schedule—a $40,000 base salary with annual increases of 23% and a 23% incentive each year.

Marilyn stated she did not understand the inflation factor in the schedule or its implications but was in favor of giving plaintiff the security of a three-year written contract with an incentive. She stated that she asked Eckert and plaintiff to write up what they wanted and to give it to her.

Eckert stated that he, Jack and Marilyn all voted for the third option on the proposal. According to Eckert, plaintiff did not vote.

Neither Jack nor Marilyn remembers a vote of any kind on the salary proposal. Everyone left the meeting knowing Eckert was going to draft an employment contract. No minutes of the meeting were made and approved at the meeting. After the meeting, Marilyn made some calculations which showed that for 1981 a reasonable projection for plaintiff's income with the definition of "net income" being all income of the corporation would be $133,000. She called Jack, who said that was wrong, that only new business was involved, not all income, and that could not be right. Marilyn and Jack then called Eckert and made an appointment to see him about this.

Subsequent to the board meeting on January 27, 1981, Eckert made two drafts of an agreement. They were different on the increase in base salary due to inflation. Eckert did not recall why his second draft differed from his first one. He stated he did not discuss the first one with anyone but changed it on his own. He also drafted proposed minutes containing a resolution approving the agreement.

After Jack and Marilyn met with Eckert, they went to see her lawyer, Mr. Plager. He reviewed the proposed minutes and the schedule and told them to call a special meeting, have the minutes read, and not to approve them. They called a special meeting on March 6. The minutes were read. No one seconded the motion to approve the minutes, and the motion died. The minutes of the meeting on March 6, 1981, were approved at the July 10, semiannual board meeting. Marilyn testified that plaintiff, attorney Eckert, and attorney Plager were asked to get together and try to negotiate something that would be acceptable to all parties.

At the July 10 meeting, Eckert asked for approval of the officers' actions since the March 6 meeting. The motion died. Jack and Marilyn moved for monthly meetings. The vote was two for and two against, and the motion failed. The minutes further state:

"Discussion was then had in regard to the election of Robert P. Chapman as President and the contract authorized by the Board of Directors at the Board of Directors Meeting held in January of 1981. A motion was made by Jack W. Chapman and seconded by Marilyn C. Laux that the Company reject and disavow any such contract with Robert P. Chapman. The motion passed upon Marilyn C. Laux and Jack W. Chapman voting aye and Richard F. Eckert voting nay. Robert P. Chapman abstained."

Plaintiff then offered to resign effective August 1, 1981, as president and director. Eckert moved the resignation be accepted, and plaintiff seconded the motion. The meeting was continued until July 24. Jack and Marilyn wanted plaintiff to reconsider. Plaintiff wanted to give them time to think about what they were doing.

On July 24, the resignation was accepted. Plaintiff's resignation letter states that the affairs of the company will be current and in perfect order. He asserts he is leaving because Jack and Marilyn had criticized him and, on July 10, had left him without a salary contract.

The trial court found that the claimed resolution was passed, that the board of directors agreed to give plaintiff a three-year contract as president, and that his salary would be set forth in proposal number three: "a base of $40,000 plus 23 per cent of the net profits of the corporation. The base would be increased in 1982 and 1983 as set forth in Plaintiff's Exhibit 2." The trial court also found that adoption of the resolution constituted an acceptance of plaintiff's offer.

The trial court further found that plaintiff's resignation did not bar him from bringing this cause of action for breach of contract.

The trial court further stated that the corporation may have gone outside the bylaws but that that could not void the contract. The trial

court also found that the minutes were properly signed by the secretary of the corporation and constituted acts of the corporation.

■ We initially address the corporation's contention that the resolution contained in Eckert's minutes of the January 27, 1981, meeting indicated an intent to enter into a written contract in the future and was not a resolution to enter into a contract at that time.

We consider the resolution as a whole, which provided in pertinent part: "RESOLVED, that a three year salary contract be entered into with the President *** The officers of the company are hereby authorized and directed to execute all documents necessary to accomplish the above resolution." Given that the minutes provided that the officers and directors were authorized and directed to execute all documents necessary to accomplish the resolution, we find that the term "be entered into" was referring to a future as opposed to a present act. Consequently, we find that the trial court erred in determining that adoption of the resolution constituted an acceptance of plaintiff's offer.

■ The corporation also contends that there was no contract under the bylaws of the corporation because (1) the bylaws limited the term of office, and (2) the bylaws state that a corporate contract is "valid only when signed by the president and duly attested by the Secretary and the official Seal of the Company affixed thereto; provided, however, that the provisions of this Section may be waived in any particular case or class of cases by a duly adopted resolution of the Board of Directors."

In response, plaintiff contends that bylaws cannot make a contract *ultra vires*, and that no act of a corporation is invalid by reason of the fact the corporation was without power to do it.

The Business Corporation Act of 1933, which was in effect at the time the contract was purportedly entered into, provides that the defense of *ultra vires* may be asserted "[i]n a proceeding by the corporation *** against the officers or directors of the corporation for exceeding their authority." (Ill. Rev. Stat. 1979, ch. 32, par. 157.8(b).) Although the language of the Act refers to a proceeding by a corporation, we believe that the Act does not limit a corporation's assertion of *ultra vires* against officers and directors to actions initiated by the corporation. To allow the assertion of *ultra vires* based on which party initiated the action would be to put form over substance.

■ Moreover, officers of a corporation are bound by the bylaws (*Ginter v. Heco Envelope Co.* (1925), 316 Ill. 183, 186; see also *Green v. Ashland Sixty-Third State Bank* (1931), 346 Ill. 174, 180 (bylaws of a corporation are binding upon none but its members and officers), as

are shareholders (*H. F. G. Co. v. Pioneer Publishing Co.* (N.D. Ill. 1946), 7 F.R.D 366, 370, *rev'd on other grounds* (7th Cir. 1947), 162 F.2d 536). And, the salary of an officer must be authorized by the bylaws of the corporation or by resolution of the board of directors. (*Bloom v. Nathan Vehon Co.* (1930), 341 Ill. 200, 205.) In the instant case, plaintiff was a shareholder, director, and officer at the time of the January 27, 1981, meeting. Consequently, plaintiff was bound by the bylaws.

■ Article IV, section 1, of the corporate bylaws provides in pertinent part:

"The officers of this corporation shall consist of a President *** who shall be elected by the Board of Directors at the regular annual meeting ***. Said officers shall hold their respective offices for one year."

Article V, section 2, of the corporate bylaws provides:

"All leases, contracts or other instruments in writing, in which the Company shall at any time hereafter be interested, shall be valid only when signed by the President and duly attested by the Secretary, and the official Seal of the Company affixed hereto; provided, however, that the provisions of this Section may be waived in any particular case or class of cases by duly adopted resolution of the Board of Directors."

The resolution that was purportedly adopted stated in part that "[t]he officers of the company are hereby authorized and directed to execute all documents necessary to accomplish the above resolution." Given this language, it must be concluded that the purported resolution did not constitute a waiver of the bylaw requirements regarding contracts since it contemplated a written contract. Consequently, there was no proper contract under the bylaws since there was no written contract signed by the president and duly attested to by the secretary. Furthermore, the alleged contract is in violation of the bylaws provision that the officers shall serve for a term of one year.

■ Whether a violation of the bylaws is to actually be considered *ultra vires* is another question. Where a secretary of a corporation received more than his entitled sum, our supreme court adopted the opinion of the appellate court wherein it was stated:

" 'The payment to him of such salary was not *** an unlawful and void act in the sense that it was *ultra vires* the corporation, but was unjustifiable and voidable because not properly authorized, as against any innocent stockholder who was thereby injured.' " (*Brown v. DeYoung* (1897), 167 Ill. 549, 551, quoting *De Young v. Brown* (1896), 66 Ill. App. 212, 214.)

Thus, even if the resolution was not *ultra vires*, it was voidable if outside of the bylaws. Thus, assuming for the moment that there was a contract, we find that it was properly voided when the directors voted to disavow the resolution on July 10, 1981.

The corporation next contends that the Statute of Frauds (Ill. Rev. Stat. 1985, ch. 59, par. 1 *et seq.*) bars enforcement of the purported contract because it was oral and for a period of more than one year. In response, plaintiff contends that the Statute of Frauds was satisfied by the minutes of the January 27, 1981, meeting prepared by Eckert; a written contract prepared by Eckert; a letter written by Jack; and minutes of the July 10, 1981, meeting prepared by Eckert.

To satisfy the Statute of Frauds there must be a writing signed by the party to be charged. (See *Mid-Town Petroleum, Inc. v. Dine* (1979), 72 Ill. App. 3d 296, 303.) The writing need not be on a single piece of paper. (72 Ill. App. 3d at 303.) However, all essential terms must be in writing, and the signed writing must refer expressly to the other writings, or the other writings must be so connected, physically or otherwise, as to show that they relate to the same contract. 72 Ill. App. 3d at 303-04.

In the instant case, the minutes of the July 27, 1981, meeting which were prepared and signed by Eckert but never approved state:

> "RESOLVED, that a three year salary contract be entered into with the President upon the following terms: A base salary of $40,000 for the year 1981 and for the year 1982 and 1983 the base salary shall be increased by the greater of 23% of the previous year's salary or the rate of inflation for the previous year. If inflation reaches 2% per month for three consecutive months, then the base salary would be increased accordingly. At the end of each year a bonus of 23% of the net profit of the company shall be paid.
>
> The officers of the company are hereby authorized and directed to execute all documents necessary to accomplish the above resolution.".

The corporation contends that these minutes are insufficient to satisfy the Statute of Frauds because they were not approved by the board. We agree.

In the case where the signature is that of an agent, the agent can only sign on terms authorized by the principal. (See *Leach v. Hazel* (1947), 398 Ill. 33, 40-41.) Furthermore, we find that where minutes are being offered to satisfy the Statute of Frauds, they must be approved, for if not approved the signature of the secretary is not authorized. This is especially true when the writing is prepared after the.

controversy arises by the attorney for the claimant. See *Bloom*, 341 Ill. at 205 (officer of a corporation cannot bind the corporation by a promise to pay another officer unless authorized by the bylaws of the corporation or resolution of the board).

■ We next consider the minutes of the July 10, 1981, meeting. These minutes were approved at the following meeting and state in pertinent part:

"Discussion was then had in regard to the election of Robert P. Chapman as President and the contract authorized by the Board of Directors at the Board Meeting held in January of 1981. A motion was made by Jack W. Chapman and seconded by Marilyn C. Laux that the Company reject and disavow any such contract with Robert P. Chapman."

Because these minutes refer to a contract authorized by the board of directors, they indicate that there was a contract. However, they do not refer to any document wherein the terms of the contract can be found. It must therefore be concluded that the minutes of the July 10, 1981, meeting were insufficient to satisfy the Statute of Frauds. This case is distinguishable from *Mayer v. Hirsch, Stein & Co.* (1918), 212 Ill. App. 441, which has been cited by plaintiff. There the court held that there was a sufficient writing where the defendant had sent a letter which stated, "Referring to your contract No. 3543, please be advised we have cancelled this contract." (212 Ill. App. at 442.) The court stated "the letter is the same as if it had said, 'we admit there was such a contract as set forth in your purchase memorandum No. 3543 but we wish to advise you that we have cancelled it.' " (212 Ill. App. at 443.) In *Mayer*, the writing which was signed specified a particular document: "contract No. 3543." In the instant case, the minutes which were approved only referred to "the contract," not "the contract in the minutes," or any particular contract. Similarly, the written contract prepared by Eckert is insufficient as it is not signed, and the letter written by Jack is insufficient as it does not contain a signature which was authorized by the corporation or refer to a specific writing containing the terms of the contract.

For the foregoing reasons we reverse the judgment of the trial court with regard to count I.

■ We next address the corporation's contention that the trial court erred in denying its counterclaim. An appellant must present contentions supported by substantive arguments. In the instant case the corporation has only gone so far as to claim that the trial court erred in deciding the issue of damages to the corporation. Although the corporation does cite to one case in this section of its brief with

regard to a portion of the claimed damages, the corporation does not inform the court why this case is relevant. Consequently, we find that the corporation's contention is so lacking in substantive argument as to preclude review.

■ Nevertheless, we are compelled to reverse the trial court's decision regarding the counterclaim and remand the cause for a new hearing. We are of the opinion that with regard to the counterclaim, the trial court was heavily persuaded by its decision that there was a contract between plaintiff and the corporation. Had a contract been in place, many of plaintiff's actions, such as the amount he paid himself for a salary, may have been proper. However, where no contract existed, the same actions may have been improper. Thus, for example, plaintiff's payment to himself of $17,808 as a bonus based on the contract appears to have been without justification.

We also note that the court belittled the entire counterclaim, referring to it as "in the nature of some rather belittling and nit-picking activities." Yet, from a review of the record it is clear that there was sufficient evidence to sustain at least a portion of the counterclaim. For example, plaintiff testified that he took a set of books entitled the "Law Man's Library" that the corporation had purchased for $658.56. From the record, plaintiff's liability regarding this portion of the counterclaim seems clear. While other amounts claimed are less clear from the record, we are of the opinion that the whole counterclaim requires further consideration. Therefore, we reverse the trial court's decision so far as it concerns the counterclaim and remand for a new hearing on the counterclaim.

### PLAINTIFF'S APPEAL

■ Plaintiff contends that the trial court improperly found that the status of Jack Chapman and Marilyn Tibbits as directors and officers of the corporation insulated them from a claim of tortious interference with a contract. We find that we need not directly address plaintiff's argument due to the fact that we have already decided that there was no contract. Since the cause of tortious interference with a contract requires the existence of a valid and enforceable contract (*Schott v. Glover* (1982), 109 Ill. App. 3d 230, 234), plaintiff is incapable of prevailing on counts II and III. We therefore affirm the decision of the trial court as to counts II and III.

Reversed in part; affirmed in part and remanded.

LINDBERG, P.J., and REINHARD, J., concur.