**John F. O'RYAN, Plaintiff,**

v.

**DEHLER MANUFACTURING CO., INC., Defendant.**

**No. 2:99cv2049.**

United States District Court,
E.D. Virginia,
Norfolk Division.

June 9, 2000.

Gregory R. Wright, Wright & Associates, P.C., Christian L. Connell, Mays & Valentine, L.L.P., Virginia Beach, VA, for Plaintiff.

Gregory N. Stillman, Benita W.Ellen, Hunton & Williams, Norfolk, Reuben A. Bernick, Maurice P. Raizes, Cohon, Raizes & Regal, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

The present matter comes before the court on defendant Dehler Manufacturing Co., Inc.'s ("Dehler") motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Defendant moves to dismiss count one of plaintiff's complaint for breach of contract based on the statute of frauds. For the reasons set forth below, defendant's motion is GRANTED.

### I. Factual and Procedural History

Assuming all facts as alleged in the complaint as true, plaintiff, John O'Ryan ("O'Ryan"), a resident of Virginia Beach, Virginia, and Dehler, a furniture manufacturer incorporated in Illinois, entered into a written employment contract on January 1, 1998, employing plaintiff to sell Dehler's products. (Compl. ¶ V; Compl. Ex. A). Under this agreement, the parties agreed that defendant would employ plaintiff as a sales director to sell defendant's furniture in three market areas: commercial sales, "ADM" government sales, and non-conflicting "ADM" government sales. This first employment contract terminated by mutual agreement of the parties on February 8, 1999. (Compl.¶ V).

In January, 1999, a month before the termination of his contract with Dehler, plaintiff accepted employment as a sales director with a competitor of defendant, Blockhouse Dormitory Furniture Corporation ("Blockhouse"). Defendant gave notice to Dehler that he was terminating his employment and accepting new employment with a competitor. (Compl.¶ VI). At that time, Morton Herman, President of Dehler, requested that plaintiff continue employment with defendant on new, more advantageous terms. (Compl.¶ VII). On February 8, 1999, the parties met at Dehler's place of business in Chicago, Illinois, to discuss terms of a second employment contract. The terms discussed and agreed upon as the basis of a new contractual relationship were those derived from a written memorandum from plaintiff to Mr. Herman dated February 8, 1999 ("February 8th memorandum"), and provided, *inter alia*, for a salary increase, an automobile allowance, increased commissions, a new severance payment award, and a contract term of five years. (Compl. ¶ VII; Compl. Ex. B).[1] As additional induce-

---

1. Although plaintiff refers to this document as a contract throughout the pleadings, the exhibit offered as proof of the contractual relationship is merely a memorandum written by plaintiff to Mr. Herman regarding those points he would like to see included in his contract. There are no signatures anywhere on the document. The February 8th memorandum, by itself, is not an enforceable written contract. However, to the extent plaintiff argues that terms listed in the February 8th memorandum formed the basis of an oral employment contract between plaintiff and defendant, the court addresses herein the enforceability of such a contract.

Moreover, Dehler denies that the parties agreed to any terms at the February 8, 1999, meeting in Chicago, Illinois, (Answer ¶ 7). However, plaintiff's allegation that an oral agreement was reached between the parties is considered true for the purposes of the instant motion. *See Hishon v. King & Spalding,* 467

ment to enter into a contractual relationship, defendant promised to pay, and did, in fact, pay $6,000.00 to plaintiff's wife for commissions she had previously earned under a separate contract, but which defendant had refused to pay. At the conclusion of the meeting, both parties agreed that the terms discussed would be written down in defendant's contractual format for both parties to sign in the future. (Compl.¶ VII). This action did not occur.

From February 8, 1999, to April 14, 1999, plaintiff continued to work for Dehler, and Dehler paid plaintiff pursuant to the terms negotiated at the February 8th meeting. (Compl.¶ VII). On April 14, 1999, Mr. Herman and plaintiff again met at Dehler's place of business in Chicago, Illinois. Mr. Herman presented a written employment contract for plaintiff to sign, but the terms of the written contract differed from those agreed on at the February 8, 1999, meeting. (Compl.¶ VIII). Consequently, plaintiff refused to sign the agreement and asked that he be given the opportunity to confer with counsel. However, in the interim, plaintiff continued to perform as Dehler's sales director. (Compl.¶ VIII).

On July 9, 1999, plaintiff again met with Mr. Herman in Chicago. At that time, plaintiff alleges that Mr. Herman insisted he sign the written contract originally presented at the April 14th meeting. When plaintiff refused to so sign, Mr. Herman accused plaintiff of professional improprieties, such as taking kickbacks, creating side deals, and being disloyal, and continued to threaten plaintiff if he refused sign the contract. Under this pressure, plaintiff resigned effective July 23, 1999. (Compl.¶ IX).

On December 13, 1999, plaintiff filed suit for: (1) breach of contract; (2) intentional infliction of emotional distress; and (3) malice, bad faith, and deliberately deceitful behavior. Specifically, plaintiff argues that the discussion at the February 8, 1999, meeting, and terms of the February 8th memorandum, constituted a second contract under which plaintiff and defendant were bound at the time of his resignation in July, 1999. Plaintiff claims that defendant's behavior at the July 9, 1999, meeting constituted constructive discharge, and as such, defendant breached the employment agreement such that plaintiff is entitled to relief.

On March 27, 2000, defendant filed the instant motion pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings on plaintiff's first claim for breach of contract. Plaintiff responded on April 10, 2000, raising a new issue in his brief. Specifically, plaintiff argued that Illinois law governed this court's substantive analysis of the issues presented in the pending motion. In light of the new law offered by plaintiff, defendant submitted a reply memorandum on April 13, 2000.[2] The matter came before the court for a hearing on April 20, 2000. After argument by both parties, the court directed counsel to submit any additional authority to the court. On April 27, 2000, counsel for plaintiff and defendant both submitted memoranda of supplemental authority for the positions outlined in their briefs and at oral argument. The matter is now ripe for review.

## II. Legal Standard and Applicable Law

A party may move for judgment on the pleadings, pursuant to Federal Rule of

---

U.S. 69, 71, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) ("At this stage of the litigation, we must accept petitioner's allegations as true. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."); *Zeran v. America Online, Inc.,* 129 F.3d 327, 329 (4th Cir.1997). Without conceding that an agreement be-

tween the parties was actually reached, defendant argues that any employment agreement contemplated a five-year term of employment. (Def. Mot. J. Pleadings at 2). Plaintiff does not dispute that any contract was to last five years. (Compl. ¶¶ VII, X; Compl. Ex. B).

**2.** Both parties now agree that Illinois law governs the contract issues. *See infra* note 3.

Civil Procedure 12(c), "any time after the pleadings are closed but within such time as not to delay the trial." Fed.R.Civ.P. 12(c). Judgment should be entered when the pleadings, construing the facts in the light most favorable to the non-moving party, fail to state any cognizable claim for relief, and the matter can, therefore, be decided as a matter of law. *See Zeran v. America Online, Inc.*, 129 F.3d 327, 329 (4th Cir.1997) (citing *Bruce v. Riddle*, 631 F.2d 272, 273 (4th Cir.1980)); *Greene v. Nat'l Car Rental Sys.*, No. 91–2756, 1992 WL 296364, at *1 (4th Cir. Oct.16, 1992) (unpublished).

 In the case at bar, plaintiff has alleged that an oral contract was negotiated between the parties on February 8, 1999, that was to govern the continuing employment relationship between plaintiff and defendant. Defendant argues that no legally enforceable contract exists between the parties, and has brought the instant motion to dismiss plaintiff's breach of contract claim on the basis that any oral agreement reached between the two parties is barred by the statute of frauds. A federal court sitting in diversity applies the substantive law of the forum state, including its choice of law provisions. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir.1999). In Virginia, while questions of breach are determined by the law of the place of performance, the validity, interpretation, or construction of a contract is governed by the substantive law of the *lex loci contractus*—the place of contracting. *See Lexie v. State Farm. Mut. Auto. Ins. Co.*, 251 Va. 390, 394, 469 S.E.2d 61 (1996); *Woodson v. Celina Mut. Ins. Co.*, 211 Va. 423, 426, 177 S.E.2d 610 (1970). The place

of contracting is determined by the place where the final act necessary to make the contract binding occurs. *See Blue Cross & Blue Shield Ass'n v. Group Hosp. & Med. Servs., Inc.*, 744 F.Supp. 700, 713 n. 4 (E.D.Va.1990). Plaintiff alleges that "on February 8, 1000, the parties met at defendant's place of business [in Illinois] and agreed ... to terms of a second employment contract ....." (Compl.¶ VII). Accordingly, the court applies Illinois law to the current questions before the court.[3]

### III. Analysis

 It is axiomatic that, in order to state a claim for breach of contract, plaintiff must allege the existence of a valid and enforceable contract upon which such a claim can be based. *See Kastel v. Winnetka Bd. of Ed.*, 975 F.Supp. 1072, 1083 (N.D.Ill.1997) (applying Illinois law); *Lewis–Kearns v. Mayflower Transit, Inc.*, 932 F.Supp. 1061, 1070 (N.D.Ill.1996) (applying Illinois law). Defendant argues that plaintiff cannot, as a matter of law, bring suit for breach of contract as no legally enforceable employment contract exists between the parties. According to defendant, any agreement between the parties contemplated performance for five years, thus precluding enforcement based on the statute of frauds.[4] The Illinois statute of frauds provides, in pertinent part:

> No action shall be brought ... upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized.

740 Ill. Comp. Stat. 80/1 (West 1998).

In response, plaintiff argues that, notwithstanding the five-year term of employ-

---

**3.** Although defendant's original motion for judgment on the pleadings was based on Virginia contract law, at the hearing on the instant motion, all parties agreed that Illinois law is the appropriate state law to govern the question of whether the oral agreement between the parties is valid and enforceable in light of the bar imposed by the statute of frauds.

**4.** *See supra* note 1.

ment, the agreement could be performed within a year and is, therefore, enforceable against defendant despite the absence of a written contract. Alternatively, plaintiff argues that the defendant satisfied the requirements of the statute of frauds with collateral documents which form an enforceable written contract, and also that plaintiff has partially performed on the oral agreement sufficient to lift the bar the statute imposes. For the reasons outlined below, plaintiff's arguments are unavailing.

## A. The Contract Cannot Be Performed Within One Year.

■ In Illinois, if it is possible for parties to perform an oral contract within one year, then that contract falls outside the statute of frauds and its terms are enforceable against the contracting parties, notwithstanding the absence of a signed writing. *See* 740 Ill. Comp. ·Stat. 80/1 (West 1998); *Goldstick v. ICM Realty*, 788 F.2d 456, 464 (7th Cir.1986) (applying Illinois law); *Sinclair v. Sullivan Chevrolet Co.*, 31 Ill.2d 507, 509, 202 N.E.2d 516 (1964). As stated above, plaintiff alleges that the parties entered into a contract for employment on the terms set forth at the February 8, 1999, meeting in Chicago. Although plaintiff acknowledges that the employment term was to last five years, plaintiff argues that the agreement also incorporated a discharge provision which allowed defendant to terminate at will and entitled plaintiff to a year's salary and commissions should his employment with Dehler be so terminated. According to plaintiff, he could presumably have been terminated under the terms of the agreement before the end of the first year, and thus the contract could be performed within one year, falling outside the statute of frauds. However, based on plaintiff's allegations in the pleadings, the court is not convinced that such a discharge ·provision exists. Furthermore, even if the discharge provision were considered a part of the oral contract, plaintiff's claim fails as a matter of law.

## 1. The Discharge Provision

■ In response to the instant motion, plaintiff argues that "both Exhibits B and C to [his] complaint make clear [that] Dehler retained the right to terminate O'Ryan at any time." (Pl. Opp'n Mot. J. on Pleadings at 3). However, plaintiff has not pleaded an oral employment agreement containing a provision permitting the termination of the contract at the will of either party. Plaintiff's complaint states that "the parties met at defendant's place of business and agreed (that is defendant pretended to agree) to terms of a second employment contract, a copy of which, marked Exhibit B, is attached and made a part of this pleading." (Compl.¶ VII). However, an examination of Exhibit B does not establish that the contract was terminable at the will of either party, it merely outlines defendant's obligations in the event of termination, providing that plaintiff is entitled to "severance pay in the amount of 12 months salary and all commission due to be paid within that period." (Compl.Ex. B). If the terms governing the contractual relationship at the time of the alleged breach were those set forth in Exhibit B, then plaintiff cannot, based on the pleadings before the court, argue that a discharge provision allows the five-year contract to be performed ·within one year, since Exhibit B does not have a discharge provision. Accordingly, the oral contract for five years would clearly fall within the statute of frauds and would be unenforceable as a matter of law.

However, as further support for the claim that the oral contract contemplated a discharge provision, plaintiff also points to language in Exhibit C, a copy of the unsigned written employment agreement defendant allegedly offered at the April 14, 1999, meeting. Exhibit C does, in fact, include a discharge provision that provides:

> ***Option of Employer to Terminate:*** The Employer may at any time, for any reason, whatever, terminate this Agreement by serving written notice upon Employ-

ee that it desires to terminate the Agreement, provided, however, that the Employee shall be entitled to be paid his base salary for a period of one (1) year in equal monthly payments and to be paid commissions then due him. (Compl.Ex. C, ¶ 7(b)). Nevertheless, the relevance of the unsigned written contract with respect to plaintiff's claim is unclear. By plaintiff's own admission, Exhibit C's terms "significantly differed from [the February 8, 1999, agreement] under which the parties had been performing," and as such, plaintiff refused to sign Exhibit C. (Compl.¶¶ VII, VIII, IX). It seems entirely inconsistent for plaintiff to plead on the one hand that he refused to be bound by the written contract offered because the terms differed from the oral agreement, and then offer that same unexecuted written contract as evidence of the terms of the agreement under which the parties operated. However, even assuming the court could construe the "Option of Employer to Terminate" clause of Exhibit C to give meaning to the obligations assigned to the parties upon a termination in Exhibit B, such that the contract contemplates a discharge provision, the contract is still barred by the statute of frauds.

### 2. The Impact of a Discharge Provision on the Statute of Frauds.

■ There has been some disagreement among the Illinois appellate courts as to whether the potential for discharge, as outlined in Exhibit C, is sufficient to render the agreement capable of being fully performed within one year such that the contract falls outside the statute of frauds. This disagreement centers on whether discharge provisions of a contract, like the one in Exhibit C, constitute a performance provision such that a contract would fall outside the statute of frauds, or a termination provision, such that the contract remains barred by the statute. For the

reasons outlined below, the court finds that any oral contract, with the Exhibit C discharge provision, between O'Ryan and Dehler is barred by the statute of frauds.

In support of his proposition that a discharge provision in an employment contract means that a contract can be performed within one year, plaintiff relies primarily on *Mueller v. Northern Illinois Gas Co.*, 12 Ill.App.3d 362, 299 N.E.2d 601 (1973).[5] In *Mueller*, the defendant argued that the contract between the parties was unenforceable because it could not have been performed within one year to save it from the statute of frauds, since the document expressly provided for a three-year period of performance. *See id.* at 366–67, 299 N.E.2d 601. The contract also had a provision that provided the "vendor shall have the right to terminate this contract at any time sales of cigarettes within said premises are less than 120 packs per week." *Id.* at 367, 299 N.E.2d 601. The court held that the contract could have been performed within one year, because the sales levels could have dropped less than 120 packs per week during that first year. *See id.* However, several Illinois appellate courts and federal district courts sitting in Illinois have held that discharge provisions, such as the one in the case at bar, would not allow a party to fully perform within a year, but instead merely constitute an excuse for non-performance.

■ In determining whether a contract is capable of performance within one year, thus avoiding the statute of frauds requirements, courts look to the performance time contemplated by the contract. *Owen v. Mark Twain Boat Co., Inc.*, No. 89–C–6824, 1990 WL 133227, at *3 (N.D.Ill. Sept.12 1990) (unpublished) (applying Illinois law); *Sinclair v. Sullivan Chevrolet Co.*, 45 Ill.App.2d 10, 14–15, 195 N.E.2d 250 (1964). The possibility of an employee's termination within one year

---

**5.** Plaintiff also relies on *Vajda v. Arthur Andersen & Co.*, 253 Ill.App.3d 345, 191 Ill.Dec. 965, 624 N.E.2d 1343 (1993). However, the court finds that plaintiff's reliance on *Vajda* is misplaced, since the contractual relationship in *Vajda* was for an indefinite term, not for a specified term of years. *See infra* at 13–15.

does not necessarily remove the employment contract at issue from the statute of frauds. *See Brudnicki v. General Elec. Co.*, 535 F.Supp. 84, 87 (N.D.Ill.1982) (applying Illinois law). Such contingencies threaten the longevity of any employment relationship. *See id.* Whether the "possibility of an employee's death or termination takes the employment agreement from the statute in a specific case depends in large part on the underlying purpose and specific terms of the agreement itself." *Id.*

In that vein, contract scholars[6] have distinguished between oral contracts for indefinite periods of time, terminable at the will of either party, which are not barred by the statute of frauds,[7] and oral contracts for fixed periods of time longer than one year, terminable at the will of either party, which are barred by the statute of frauds. In the latter, the performance contemplated by the contract is employment for the entire fixed term, whereas termination, even at the will of a party, is merely an excuse for non-performance. As explained in American Jurisprudence:

> [I]t is the general rule that an oral contract of employment terminable at the will of either party in which no definite term longer than a year is agreed upon is not within the provision of the statute of frauds relating to contracts which are not to be performed within a year. Under such a contract of hire, the employee may remain as long as he suits the employer, or until he himself becomes dissatisfied with the position, and it is possible for full performance to be had within a year.
>
> \* \* \* \* \* \*
>
> When, however, an employment contract stipulates for the performance of services under it for more than one year, it is within the infra annum provision of the statute, and must be in writing, although it contains a provision for the

termination of the contract at any time within the year, upon the giving of a prescribed notice. If such contract should be terminated within the year, the result would not be an alternative form of performance, but excusable nonperformance.

72 Am.Jur.2d *Statute of Frauds* § 40 (1974) (citations omitted). Furthermore, Professors Williston and Lord, in *Williston on Contracts*, explain that

> in contradistinction to the rule laid down by the courts in cases involving alternative performances is the principle governing promises not in writing where the contingency is not a true alternative, but an excuse for nonperformance by way of annulment. Oral agreements which are subject to a right of cancellation or defeasance, not by operation of law but by the express terms of the contract, within the period of a year— such as a contract for several years' service containing a provision permitting termination by either party on a week's or a month's notice—are generally held to be within the Statute.

9 *Williston on Contracts* § 24:9 (4th ed.1999).

The majority of Illinois courts either specifically recognize this distinction, or their decisions are consistent with the distinction. *See Cargo v. Allstates Air Cargo, Inc.*, No. 98–C–4422, 1998 WL 601910, at \*2 (N.D.Ill. Sept.9, 1998) (unpublished) (applying Illinois law); *Cherry Payment Sys., Inc. v. Rogers*, No. 92–C–5918, 1993 WL 291694, at \*2–3 (N.D.Ill. Aug.2, 1993) (unpublished) (applying Illinois law); *Lamaster v. Chicago and Northeast Illinois Dist. Council*, 766 F.Supp. 1497, 1507–09 (N.D.Ill.1991) (applying Illinois law); *Vajda v. Arthur Andersen & Co.*, 253 Ill. App.3d 345, 348, 358, 191 Ill.Dec. 965, 624 N.E.2d 1343 (1993); *Gilliland v. Allstate Ins. Co.*, 69 Ill.App.3d 630, 633, 26 Ill.Dec. 444, 388 N.E.2d 68 (1979); *Balstad v. So-*

---

**6.** *See infra* at 14–15.

**7.** *See supra* note 5.

*lem Machine Co.*, 26 Ill.App.2d 419, 423–24, 168 N.E.2d 732 (1960). In cases such as the one at bar, where a definite term of employment is contemplated by the oral agreement, the agreement of employment is intended to run for a certain number of years, "and any contingency that terminates the agreement cuts that contemplated period short, preventing full performance." *Lamaster*, 766 F.Supp. at 1508. It is, in these cases, "significant that the agreement established a contemplated term and the plaintiff's departure would cut that term short, thereby frustrating the intent of the contract." *Id.*

In *Gilliland*, an oral contract was found to be unenforceable under the statute of frauds, where the agreement provided for plaintiff to be employed until retirement at age 62, as long as he complied with all lawful direction of the employer. *See* 69 Ill.App.3d at 633, 26 Ill.Dec. 444, 388 N.E.2d 68. Although the contract specified that it would end if the contingency came to pass, the contingency was interpreted as interfering with, rather than effecting, full performance. *See id.* Similarly, in *Cargo*, the oral contract between plaintiff and defendant anticipated a four-year performance term. The court found that although termination within a year was possible under the contract, such an action would frustrate the term contemplated by the parties; therefore, that contract fell within the statute of frauds. *See* 1998 WL 601910, at *2.

Although in *Cherry* the plaintiff attempted to enforce a three-year employment contract that was terminable for cause, the court found that plaintiff did not allege, "nor do the facts indicate, that this contract was capable of performance within a year." 1993 WL 291694, at *3. According to the court, by its very terms, the three-year contract was incapable of being performed in one year. *See id.* Likewise, in *Owen*, the alleged oral agreement between plaintiff and defendant provided that defendant would employ plaintiff for three years. *See* 1990 WL 133227, at *4.

However, it also contained a discharge provision, whereby defendant could discharge Owen if it ceased doing business before the end of the contract term. *See id.* The court in *Owens* determined that plaintiff's interpretation of prior precedent, including *Mueller*, extended the "within one year" exception too far. *See Owen*, 1990 WL 133227, at *4. The court in *Owen* also determined that what the court in *Sinclair* meant was that "if plaintiff could fully perform the actual work contemplated by the parties within one year, then the oral promise would fall outside the statute of frauds." *Owen*, 1990 WL 133227, at *4. If a contract is to serve for three years, then obviously, the performance could not be completed within one year. *See id.*

Acknowledging the decision in *Mueller*, this court is persuaded by the weight of the contrary aforementioned authority that finds termination provisions in an oral contract for a definite term of employment to fall within the statute of frauds. Recognizing that if termination and performance were synonymous, the statute of frauds would be rendered useless, *see Sinclair*, 45 Ill.App.2d at 15, 195 N.E.2d 250, this court finds the exercise of any termination provision that may be considered by the oral agreement between O'Ryan and Dehler would merely have frustrated the term of the contract, excusing non-performance. Therefore, the contract in the case at bar, if it does contain the discharge provision of Exhibit C, falls within the statute of frauds and is unenforceable.

**B. The Writings Offered by Plaintiff Are Insufficient to Bring the Alleged Employment Contract Out of the Statute of Frauds.**

Plaintiff argues that even if the contract falls within the statute of frauds, the writings surrounding the employment arrangement are sufficient to satisfy the statute of frauds. For the reasons set forth below, plaintiff's argument is without merit.

In order to satisfy the statute of frauds, there must be a writing, not neces-

sarily on a single piece of paper, which is signed by the party to be charged. *See* 740 Ill. Comp. Stat. 80/1 (West 1998); *Prodromos v. Howard Savings Bank*, 295 Ill. App.3d 470, 474, 229 Ill.Dec. 718, 692 N.E.2d 707 (1998); *Chapman v. Freeport Sec. Co.*, 174 Ill.App.3d 847, 854, 124 Ill. Dec. 289, 529 N.E.2d 6 (1988). While writings sufficient to satisfy the statute of frauds "may include several documents, which may consist of such forms as letters, notes, and papers," the writings "must contain all essential terms of the contract and the signed writing must refer expressly to the other writing, or the other writings must be connected, physically or otherwise to show that they related to the same contract." *Prodromos*, 295 Ill. App.3d at 474–75, 229 Ill.Dec. 718, 692 N.E.2d 707 (citing *Dickens v. Quincy College Corp.*, 245 Ill.App.3d 1055, 1060, 185 Ill.Dec. 822, 615 N.E.2d 381 (1993); *Chapman*, 174 Ill.App.3d at 854, 124 Ill.Dec. 289, 529 N.E.2d 6); *see also Mariani v. School Dirs. of Dist. 40*, 154 Ill.App.3d 404, 407, 107 Ill.Dec. 90, 506 N.E.2d 981 (1987); *Mapes v. Kalva Corp.*, 68 Ill.App.3d 362, 368, 24 Ill.Dec. 944, 386 N.E.2d 148 (1979); *Western Metals C. v. Hartman Ingot Metal Co.*, 303 Ill. 479, 483, 135 N.E. 744 (1922).

To overcome the statute of frauds, plaintiff looks to the memorandum from the February 8, 1999, meeting (Compl.Ex. B), the unsigned contract Dehler offered at the April 14, 1999, meeting (Compl.Ex. C), personnel records from Dehler (Pl. Opp'n Mot. J. on Pleadings, Ex. 1), and a memorandum from Barry Pinchofsky, Vice President of Dehler (Pl. Opp'n Mot. J. on Pleadings, Ex. 2). The court, however, considers only the first two documents in connection with the instant motion.[8]

In order to satisfy the statute, the writings must show all essential terms of the contract and be signed by the party, or

---

8. Although plaintiff has submitted, in response to the instant motion, a personnel record and a memorandum from Barry Pinchofsky, Vice–President of Dehler, as evidence of an enforceable employment contract between the parties, the court declines to consider the documents in connection with defendant's 12(c) motion. Rule 12(c) provides:

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to, *and not excluded by the court*, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given a reasonable opportunity to present all material made pertinent to such a motion by Rule 56. (emphasis added).

Under "a fair reading of this provision, admission [of evidence outside the pleadings is] not required, for the rule makes it discretionary with the court to exclude evidence of matters outside the pleadings." *A.S. Abell Co. v. Baltimore Typographical Union No. 12*, 338 F.2d 190, 193 (4th Cir.1964). Because the two documents submitted outside the pleadings would have no substantive effect on this court's decision, the court exercises its discretion and chooses not to consider the writings.

Although the Pinchofsky memorandum and the personnel records show that plaintiff was employed by defendant, and may even demonstrate the parties were performing pursuant to the terms agreed on at the February 8, 1999, meeting, neither of these documents is signed; therefore, neither can stand on their own as evidence of a written agreement, nor can they be the basis for incorporating all four documents into a single writing that satisfies the statute of frauds. *See, e.g., Prodromos v. Howard Savings Bank*, 295 Ill.App.3d 470, 474, 229 Ill.Dec. 718, 692 N.E.2d 707 (1998); *Western Metals Co. v. Hartman Ingot Metal Co.*, 303 Ill. 479, 483, 135 N.E. 744 (1922) ("It is ... well established that a complete contract, binding under the Statute of Frauds, may be gathered from letters, writings, and telegrams relating to the subject matter of the contact, ... though only one of the writings may be signed by the party to be charged."). Defendant states broadly that the documents prepared by Dehler "include the 'signature' necessary to satisfy the statute of frauds." (Pl. Opp'n Mot. J. Pleadings at 6). However, a careful examination of each page of these documents reveals no signature anywhere on the documents. To the extent that plaintiff argues that because the exhibits are business documents prepared in the ordinary course of business, the signature requirement is satisfied, plaintiff has not offered, nor has the court found, binding Illinois precedent to support such an inference. The unsigned documents would not affect this court's analysis, nor its conclusions of law. Consequently, the court excludes them, and proceeds on the merits of the motion as filed.

an authorized representative of the party to be charged. While Exhibit B and Exhibit C certainly outline the terms of a potential employment contract, neither of the documents is signed. Thus, the documents together are unable, as a matter of law, to satisfy the requirements of the statute of frauds.

### C. Partial Performance Does Not Take the Contract Out of the Statute of Frauds.

■ Lastly, plaintiff argues that the writing requirement of the statute of frauds is excused because he partially performed according to the terms of the oral agreement. Although the doctrine of partial performance can remove the bar of the statute of frauds in certain cases, the Illinois Supreme Court has recently suggested that this exception to the statute is to be narrowly applied. In *McInerney v. Charter Golf, Inc.*, 176 Ill.2d 482, 491, 223 Ill.Dec. 911, 680 N.E.2d 1347 (1997), the court explained that the exception is invoked in order to avoid "a virtual fraud from being perpetrated on the performing party." (citations omitted). A party's partial performance "generally does not bar application of the statute of frauds, *unless it would be 'impossible or impractical to place the parties in status quo or restore or compensate' the performing party for the value of his performance.*" *McInerney*, 176 Ill.2d at 491, 223 Ill.Dec. 911, 680 N.E.2d 1347 (emphasis added) (citing *Mapes v. Kalva Corp.*, 68 Ill.App.3d 362, 368, 24 Ill.Dec. 944, 386 N.E.2d 148 (1979)); *see also Fischer v. First Chicago Cap. Mkts., Inc.*, 195 F.3d 279, 283 (7th Cir.1999) (applying Illinois law); *Carl A. Haas Auto. Imports, Inc. v. Lola Cars Ltd.*, 933 F.Supp. 1381, 1388 (N.D.Ill.1996) (internal citations omitted) (applying Illinois law); *Prodromos*, 295 Ill.App.3d at 476, 229 Ill.Dec. 718, 692 N.E.2d 707. Since individuals performing under an employment contract can be fully compensated for work performed, Illinois courts have consistently found that partial performance of a normal employment contract will not remove an alleged oral agreement from the statute of frauds. *See Fischer*, 195 F.3d at 282; *Owen*, 1990 WL 133227, at *5; *McInerney*, 176 Ill.2d at 491, 223 Ill.Dec. 911, 680 N.E.2d 1347; *Prodromos*, 295 Ill.App.3d at 476, 229 Ill.Dec. 718, 692 N.E.2d 707; *Mariani*, 154 Ill.App.3d at 407, 107 Ill.Dec. 90, 506 N.E.2d 981; *Mapes*, 68 Ill.App.3d at 368, 24 Ill.Dec. 944, 386 N.E.2d 148. To allow the employee's time worked and compensation for part of the duration of the contract to act as such a bar "would make the relevant provision of the statute of frauds meaningless." *Mariani*, 154 Ill.App.3d at 407, 107 Ill.Dec. 90, 506 N.E.2d 981 (citing *Mapes*, 68 Ill.App.3d. at 368, 24 Ill.Dec. 944, 386 N.E.2d 148). Otherwise, "[a]ny contract where the employee had started work and received a paycheck would be protected from the application of the statute." *Id.* Accordingly, to the extent plaintiff argues that because he partially performed on the terms of the oral employment agreement, such performance will not lift the bar of the statute of frauds.

In order to remove this employment contract from the statute, plaintiff also argues that this contract was not merely an employment contract, but instead represented an opportunity for employment foregone by plaintiff in reliance on defendant's promise of a five-year employment relationship. In January, 1999, plaintiff accepted employment as a sales director with Blockhouse, one of defendant's competitors, and gave notice to defendant that he would no longer be working for Dehler. After coming to an agreement with Dehler about future employment, plaintiff told Blockhouse that he would not work for them. Plaintiff argues that this action removed the contract from the scope of the statute and allows plaintiff to recover on its terms.

■ In support of his argument, plaintiff argues that the case at bar mirrors the case in *Carl A. Haas Automobile Imports, Inc. v. Lola Cars Ltd.*, 933 F.Supp. 1381

(N.D.Ill.1996), and that, as such, *Haas* is dispositive of plaintiff's argument. In *Haas*, Haas Automobile Imports, Inc. ("Haas"), filed suit against Lola Cars Ltd. ("Lola") for breach of an oral promise to continue Haas as the exclusive North American distributor of Lola's race cars through the year 2000. *See Haas*, 933 F.Supp. at 1383. Lola pleaded the statute of frauds to Haas' breach of contract claim; however, the district court applied the doctrine of partial performance, allowing plaintiff to satisfy the statute of frauds and found the contract enforceable against the defendant. *See id.* at 1387–88. The factor which allowed recovery under the partial performance theory was that defendant

> required, as a condition of Haas' promised exclusive on Lola's cars through 1998, that Haas terminate its entire relationship with Reynard—a then-existing profitable relationship involving products and markets in which Lola did not compete. And Haas did exactly what [defendant] demanded in exchange for the latter's promise of a firm multiyear relationship.

*Id.* at 1390. While plaintiff argues that "O'Ryan's decision to forego the job with Blockhouse is identical to Haas's decision to terminate its relationship with Reynard" (Pl. Opp'n Mot. J. on Pleadings at 10), the court disagrees.

By entering into an exclusive distributorship contract, Haas not only had to perform for defendant, but had to cease involvement in other, concurrently profitable distribution relationships, which would have brought the company additional profit. The court found that the "foregoing of [these opportunities, which included an equity venture], each posing obvious difficulties in quantification, would render futile the prospect of an action at law against [the defendant] for restitution." *Id.* at 1390 n. 18. In the case at bar, although plaintiff made a decision to work for Dehler instead of Blockhouse, thus turning down a position with a competitor, there is clearly a logical difference between an exclusive distributorship relationship as in *Haas,* and a simple employment contract as in this case. First, there is nothing in the February 8th memorandum (Compl.Ex. B), which plaintiff claims constituted his oral contract with defendant, that requires plaintiff to give up opportunities to enter into relationships with other employers, had he so chosen, then or in the future.[9] Second, and importantly, unlike Haas, the plaintiff in the case at bar can be adequately compensated for the value of his partial performance under any contract he may have had. *See, e.g., McInerney,* 176 Ill.2d at 491, 223 Ill.Dec. 911, 680 N.E.2d 1347. This result comports with the narrow construction required by the Illinois courts to excuse the writing requirement of the statute of frauds due to partial performance. *See, e.g., id.*

Furthermore, partial performance is unavailable as an exception to the statute of frauds since plaintiff seeks only monetary damages in connection with his claim for breach of contract. Although partial performance of an oral contract may remove an action from operation of the statute, this theory " 'has been applied in those cases where a party is seeking the equitable remedy of specific enforcement.' " *Owen,* 1990 WL 133227, at *5 (citing *Phillips v. Britton,* 162 Ill.App.3d 774, 781–82, 114 Ill.Dec. 537, 516 N.E.2d 692 (5th Dist.1987)). Partial performance is not available in actions at law. *See*

---

9. The court realizes that, given the reason for the negotiations between Dehler and plaintiff, namely plaintiff having accepted employment with a competitor of defendant, it was implied that plaintiff would not accept other employment with competitors of defendant at the same time he was working for defendant. Moreover, the *unexecuted* written contract (Compl.Ex. C) did contain a non-compete clause and had a requirement of "loyalty" to defendant. However, these factors do not justify an extension of *Haas* into the realm of general employment contracts, whereby a person voluntarily gives up one position with a competitor to accept another.

*Fischer*, 195 F.3d at 282 ("[T]he partial performance exception is an equitable remedy and is therefore unavailable to [the plaintiff] who seeks only money damages."); *Gibbons v. Stillwell*, 149 Ill. App.3d 411, 416, 102 Ill.Dec. 864, 500 N.E.2d 965 (1986) (plaintiff cannot invoke equitable relief unless there is no adequate remedy at law). Thus, "in order to state a claim for part performance, a plaintiff must request equitable relief." *Owen*, 1990 WL 133227, at *5. Plaintiff has not done so here. In the case at bar, plaintiff prays only for legal remedies: $1,000,- 000.00 compensatory damages, $500,000.00 punitive damages, and costs associated with the instant suit. (Compl. at 5). Accordingly, the doctrine of partial performance is unavailable to plaintiff.

### IV. Conclusion

For the reasons set forth above, defendant's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is **GRANTED**. Accordingly, count one of plaintiff's complaint is **DISMISSED**. The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to counsel for plaintiff and defendant.

IT IS SO ORDERED.